**Michael Maurice SPILLMAN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 3–91–041–CR.**

Court of Appeals of Texas, Austin.

Feb. 26, 1992.

Terrence W. Kirk, Austin, for appellant.

Ken Anderson, Dist. Atty., Sally Ray, Asst. Dist. Atty., Georgetown, for appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

This case presents a difficult search and seizure question. Appellant, Michael Maurice Spillman, was indicted for aggravated possession of methamphetamine with intent to deliver. Tex. Health & Safety Code Ann. § 481.112 (Pamph.1992). Appellant waived his right to a jury trial and pleaded not guilty before the district court. The court found appellant guilty and assessed his punishment at life imprisonment and a $20,000 fine.

By agreement of the parties, appellant's motion to suppress evidence was tried at the same time as the nonjury trial. In a single point of error, appellant asserts that the trial court erred in admitting physical evidence obtained as the result of an allegedly illegal search and seizure. We will affirm the judgment of the district court.

The evidence adduced at the hearing on the motion to suppress evidence established that in the early morning hours of December 17, 1989, shortly before 1:00 a.m., Texas Department of Public Safety Trooper Lee Richards was working routine traffic enforcement, alone, in a marked patrol car on Interstate Highway 35. Richards observed a red Ford Mustang travelling southbound at "a very high rate of speed." Richards pulled onto the highway behind the Mustang and clocked the vehicle's speed on radar at 77 m.p.h. At that point, he activated his emergency lights to stop the vehicle.

Richards approached the driver's side of the Mustang and identified himself. He asked the driver to get out and step to the rear of the car, away from the lane of moving traffic. The driver and owner of the car was Lori Ploetz, who gave Richards her driver's license bearing a San Antonio address. After Richards advised Ploetz she had been speeding, he followed standard procedure: he inquired about her reason for speeding while he wrote the traffic citation. Richards testified that Ploetz told him, "she had been to Dallas to take [her] passenger's brother home and then return that same day, referring to the passenger as Mr. Spillman." According to Ploetz, Spillman's brother had flown into San An-

tonio for the Christmas holidays. When he did not have a way back to Dallas, Ploetz agreed to drive him.

Under the circumstances, including the late hour and the excessive speed, Richards decided to speak to the passenger, appellant. Richards asked appellant the same questions he had asked Ploetz. Appellant responded that they had been to Dallas "to visit friends." Richards asked him "if they did anything else other than visit their friend," and appellant told him that they had taken his brother from San Antonio to Dallas. When asked how his brother had gotten to San Antonio, appellant said that "he didn't have any idea how he got there.... I guess he hitched, hitched a ride."

Richards noticed that appellant, still seated in the vehicle, visibly shook during their conversation and avoided eye contact with him. Richards believed that appellant was shaking from nervousness. The Trooper also noticed a bulge in the area of appellant's crotch. "The bulge looked as if it was something hard and something square" that could not be "the result of some natural part of his anatomy." Based on his observations and the passenger's and driver's conflicting stories, Richard's suspicions were heightened that appellant had some foreign object concealed in the crotch of his trousers.

Therefore, Richards went to his patrol car and called for backup. He then returned to Ploetz and asked her if there was anything illegal in the vehicle, such as "narcotics, weapons or stolen property." She responded, "No." Richards next asked if he could look inside the hatch-back vehicle. Ploetz "paused ... looked down at the ground," and replied, "I would like to talk to the passenger." Richards told her that, as the owner of the car, she had to decide. He again asked if there was anything illegal in the car and, after another hesitation, Ploetz again replied, "No." Richards again requested permission to search the vehicle and this time Ploetz reluctantly agreed.

At that moment, the requested backup officers arrived. Richards returned to the passenger side of the vehicle, asked appellant to step out of the car, and conducted a "pat-down" of appellant's body including the crotch area. Richards testified that he was searching "for weapons"; that he conducted this *frisk* "for safety factors." Since appellant was not under custodial arrest, Richards testified he did not want to handcuff the occupants while searching the vehicle. However, "for his safety and the safety of the other officer[s]," Richards wanted to be sure that there were no weapons on appellant's person.

While conducting the "pat-down," Richards felt "something hard in the crotch area." He asked appellant to undo his pants, and as he did, Richards observed "a baggie or something plastic inside his pants." Because of his experience with persons who transport contraband, Richards believed he had discovered narcotics. He removed two baggies: one contained "a brownish crystal-like substance" and the other contained "a greenish plant-like substance," which Richards believed to be marihuana. A search of the Mustang revealed more controlled substances and several items of drug paraphernalia. Lab analysis of the crystal-like substance seized from appellant's person revealed it to be 51.36 grams of 81% pure methamphetamine.

At the outset, we note that appellant's sole point of error relates to the legality of the *frisk*. Appellant concedes on this appeal that probable cause existed to stop the driver for the traffic offense, i.e., speeding. He does not challenge the probable cause to search the vehicle because Ploetz consented. Nor does appellant contest Richards' right to extract the baggies from appellant's clothing once the frisk had given Richards probable cause to believe that appellant was hiding something in his crotch area. Appellant's sole basis for review in this court is the legality of the pat-down and frisk of the appellant after he had exited the vehicle.

### DISCUSSION AND HOLDING

Over twenty years ago in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court

set forth a very narrow exception to the probable cause requirement in search and seizure cases of this type. In *Terry*, a police officer suspected that Terry and two other men were casing stores in Cleveland, Ohio, with the intent of burglarizing them. The officer detained the suspects and asked them their names. Fearing that they might have weapons on their persons, the officer patted down the outside of the suspects' clothing and found a pistol in Terry's overcoat pocket. Terry challenged the legality of the search, alleging the absence of probable cause to suspect that he had committed a crime. The Supreme Court sustained the validity of the search, holding as follows:

> [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Terry*, 392 U.S. at 27, 88 S.Ct. at 1883 (citations omitted).

In subsequent cases, the Supreme Court has observed that the *Terry* rule recognized that a balance must be struck between the privacy interest of individuals and the safety of police officers in performing their duty. *See, e.g., Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). However, these same cases have stressed the fact that the "stop and frisk for weapons" exception to the probable cause requirement in search and seizure cases is extremely narrow. It is with these parameters in mind, that we examine the search in question.

## 1. The State's Position.

■ The State contends that the facts of this case fit within the *Terry* exception because Trooper Richards testified that he conducted the frisk of appellant searching for "weapons." The State relies primarily upon *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), which it considers controlling. In that case, the police stopped Mimms because the car he was driving had an expired license plate. The officer in question asked Mimms to step out of the car and as he did so, the officer observed a "bulge" under Mimms' jacket. The officer conducted an outer clothing pat-down and discovered a loaded .38 caliber revolver. The United States Supreme Court upheld the legality of the search in *Mimms* on the basis that under the particular facts and circumstances of that case, the police officer's frisk was reasonable.

We regard *Mimms* as instructive but not controlling. In *Mimms*, the bulge under Mimms' jacket objectively appeared to be a weapon. The officer's search then confirmed his subjective belief; Mimms was indeed carrying a weapon. In the instant case, there is no testimony that Trooper Richards thought the "square and hard bulge" in appellant's crotch area was a weapon. Instead, Trooper Richards testified that, based upon his experience in dealing with drug investigations, the crotch area is a frequent location for hiding drugs because of its inaccessibility in a routine "pat-down." Thus, unlike the *Mimms* case, there is objective evidence in this record to infer that Richards did not believe the bulge to be a weapon.

A case from this Court that is similar in many respects to the instant case is *Ramsey v. State*, 806 S.W.2d 954 (Tex.App.1991, pet. ref'd). In *Ramsey*, an Austin police officer observed a car speeding down a city street at about two o'clock in the morning. The officer followed the car and noticed it cut through a business parking lot and, without stopping, turn onto a major thoroughfare. The officer stopped the car, shined his flashlight into the vehicle as he approached, and observed Ramsey throw a maroon-colored shaving kit onto the passenger-side floorboard. After having Ramsey exit the vehicle, the officer searched

the shaving kit, justifying his search as necessary for his safety because the kit might have contained a weapon. Instead, the shaving kit contained narcotics. In *Ramsey*, this Court observed:

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect.
>
> \* \* \* \* \* \*
>
> In any event, we stress that a *Terry* investigation, such as the one that occurred here, involves a police investigation "at close range," when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a "quick decision as to how to protect himself and others from possible danger...."

*Ramsey*, 806 S.W.2d at 956, 958 (quoting *Michigan v. Long*, 463 U.S. 1032, 1049, 1052, 103 S.Ct. 3469, 3480, 3482, 77 L.Ed.2d 1201 (1983)). We concluded that, under the particular facts in *Ramsey*, the search of both the passenger compartment and the shaving kit was reasonable and did not constitute an illegal search. Appellant in this case seeks to distinguish *Ramsey*, in that the officer there was acting alone, while in this case, backup officers were on the scene. This is obviously a distinction of some note, but we do not regard it as dispositive. The *Ramsey* case is so significantly similar as to be persuasive.

2. Appellant's Position

Appellant contends that Trooper Richards was searching for "drugs," not for "guns," at the time of appellant's arrest. Appellant takes the position that the traffic stop, though lawful at its inception, quickly degenerated into a *fishing expedition* culminating in "drug interdiction."

Appellant relies primarily on the case of *Keah v. State*, 508 S.W.2d 836 (Tex.Crim. App.1974). In *Keah*, two police officers stopped a car after the driver made a sharp right-hand turn without signaling, almost causing a collision. Before the car pulled over and stopped, the officers saw Keah, a passenger in the car, lower his shoulders "as if to pick up something or stick something up under the seat." Once the car stopped, Keah got out and one of the officers observed a "large bulge" in the left-hand pocket of his jacket. After the officer asked Keah three times about the bulge in his jacket and Keah refused to respond, the officer reached into Keah's pocket and found illicit drugs. The Court of Criminal Appeals held the search in *Keah* was illegal because: "At no point did [Officer] Proctor testify that he thought the bulge was a weapon; at no point did he testify that he thought appellant was armed and dangerous; *at no point did he testify that he believed his safety or that of others was in danger.*" *Id.* at 839 (emphasis added).

We regard *Keah* as distinguishable from the facts of this case. Unlike *Keah*, at the motion to suppress evidence hearing, Trooper Richards affirmatively testified that he conducted his frisk of appellant to search for "weapons." Richards affirmatively testified in this record that his search was conducted "for my safety" and "the safety of the other officer[s] that was out there." Thus, the missing testimony that the Court of Criminal Appeals regarded as vitally important in *Keah* was the very testimony given by Richards in the instant case.

Appellant responds that Richards' testimony is pure "boilerplate"; that he did nothing more than utter the magic words such as "weapons" and "personal safety," but the objective facts indicate otherwise. Some of the objective facts at the scene of the search and subsequent seizure support appellant's contention in this regard. Some of the objective facts do not.

■ At a hearing on a motion to suppress evidence, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and an appellate court must defer to the trial court's findings of fact absent a clear abuse of discretion. *State v. Nolan*, 808 S.W.2d 556, 560 (Tex.App.1991, no pet.);

*see also Duff v. State,* 546 S.W.2d 283, 286 (Tex.Crim.App.1977). Here it is obvious that the trial court believed Trooper Richards when he stated that he conducted the pat-down frisk looking for weapons. We are not in a position to second-guess the trial court's determination in this regard. *See State v. Comeaux,* 786 S.W.2d 480, 482 (Tex.App.1990), *aff'd,* 818 S.W.2d 46 (Tex. Crim.App.1991).

Finally, appellant contends that even if this search passes muster under the Fourth Amendment to United States Constitution, it violates Article I, section 9 of the Texas Constitution. In the recent case of *Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991), the Texas Court of Criminal Appeals, in a search and seizure case, determined that a challenge made under state constitutional law would not be foreclosed based upon corresponding cases construing similar provisions of the United States Constitution. While the Texas Constitution may well offer broader search and seizure protections than those of the United States Constitution, we believe that a narrow exception for *reasonable searches* as countenanced by *Terry v. Ohio* should be applied to search and seizure under the Texas Constitution.

We conclude that the search in this case does not offend state or federal constitutional guarantees. Appellant's point of error is overruled and the judgment of conviction is affirmed.