Richard SIKES, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–98–00098–CR.

Court of Appeals of Texas,
Austin.

Nov. 30, 1998.

---

William P. McNabb, San Marcos, for Appellant.

Marcos Hernandez, Jr., Criminal District Attorney, Kalynne Harvey, Assistant District Attorney, San Marcos, for State.

Before Justices POWERS, KIDD and B.A. SMITH

JOHN POWERS, Justice.

After his motion to suppress evidence was overruled, appellant Richard Sikes pleaded no contest to an information accusing him of possessing two ounces or less of marihuana. Tex. Health & Safety Code Ann. § 481.121 (West Supp.1998). The court found that the evidence substantiated appellant's guilt, but deferred adjudication and placed him on community supervision. Having preserved the issue for appellate review, appellant contends the marihuana was seized in violation of the United States and Texas constitutions and that the court erred by overruling the motion to suppress. U.S. Const. Amend. IV; Tex. Const. art. I, § 9. We agree that the motion should have been granted, and will reverse the deferred adjudication order.

### Background

At about 2:00 on the afternoon of April 24, 1997, Southwest Texas State University police officer Robert Elrod saw "an individual, what appeared to be him sticking his hand through a plastic lining window of a Jeep" parked in a university lot. This person then returned to a waiting vehicle and drove off. Believing that he may have witnessed a burglary of a vehicle, Elrod followed the suspect's automobile and eventually stopped it. Elrod saw no traffic violations as he followed the car and a computer check of the license plate was negative.

The driver of the car and the man Elrod saw in the parking lot was Mark Sikes. With him in the car was his brother and our appellant, Richard Sikes. When told by the officer why he had been stopped, Mark explained that the Jeep belonged to his girlfriend and that the conduct observed by Elrod was him leaving her a note. Looking through the window of Mark's car, Elrod could see "bottles of alcohol" in the front seat area. Elrod could not clearly see into the back seat because the windows were tinted. The officer asked Mark for permission to search his car. Mark, who by this time was outside the vehicle, denied this request.

A second officer, Adam Rodriguez, now arrived at the scene. Richard Sikes was asked to exit the car. As he got out, Richard told the officers that he had been drinking and taking over-the-counter medication. Elrod testified that Richard's speech was slurred and that he was unsteady on his feet, but the officers performed no sobriety tests. Elrod testified that Mark Sikes did not appear to be intoxicated and that he did not suspect him of driving while intoxicated.

Mark told Elrod that he had "nothing to hide" in his automobile, but that he did "have alcohol" and did not want "to get in trouble for that." Elrod told him that "he was not going to get in trouble for it" because the officer had not seen him drinking while driving. With that assurance, Mark agreed to a search of his car and signed a written consent form. Elrod then began his search.

By this time, the two brothers were standing at the side of the road and were being watched by Rodriguez. Because he had "repeatedly asked them to keep their hands out of their pockets and I was concerned that they might have something in there," Rodriguez asked them to empty their pockets. They complied with this request, revealing no weapons or contraband. Rodriguez then did a "pat-down search around their waist area and pant-leg area" for "officer safety." Asked why he feared for his safety, Rodriguez answered, "Well, personally I do a pat-down search whenever we search a vehicle to make sure that they might not pull out something while we're searching the vehicle." Elrod was also asked if he had feared for his

safety. He answered that "there is always ... a fear for an officer's safety ... on any stop."

Rodriguez testified that as he patted around appellant's waist, "I was looking down towards his waist area and I observed in his pocket a plastic sandwich bag in his right pocket." The officer said that appellant "was wearing big, baggy bluejean shorts, and it was open enough to where I could look directly down into the pocket and see [the bag] in plain view." Based on his training and experience, and given appellant's apparent intoxication, the officer suspected that the sandwich bag contained marihuana. Rodriguez then reached into appellant's pocket and removed the bag. His suspicion was confirmed. The bag contained a green leafy substance with the appearance and odor of marihuana. Appellant was then arrested.

After Rodriguez discovered the marihuana in appellant's pocket, Elrod found a pipe in the back seat of Mark Sikes's car. Elrod testified that the pipe smelled as if it had been used to smoke marihuana, but said the pipe did not contain marihuana. There is no evidence that the pipe was tested for marihuana residue. Appellant told the officer that the pipe belonged to him. Elrod did not find anything in the car to indicate foul play earlier in the parking lot. When Elrod returned to the parking lot, the Jeep was gone.

Mark Sikes testified at the suppression hearing. He said that Elrod questioned him very briefly about the possible burglary of the Jeep before asking to search his car. Mark eventually consented to the search because he "honestly felt like we weren't going to be able to leave until I did." He also testified that it was impossible for Rodriguez to have seen inside appellant's pants pocket, and that the officer had not frisked appellant in any event. Instead, Rodriguez had simply walked up to appellant, put his hand in appellant's pocket, and removed the bag.

**1.** Appellant also seems to argue that the scope and duration of the detention exceeded that necessary to effectuate the purpose of the stop. *See Davis v. State,* 947 S.W.2d 240, 244–45 (Tex.

### Discussion

■■■■ Appellant does not contend that the initial stop and detention were unlawful. He insists, however, that the protective pat-down during which the marihuana was found was an unconstitutional search.[1] A police officer who has lawfully detained a person for investigation may conduct a protective search of the detainee's outer clothing for weapons if the officer has a reasonable belief based on specific articulable facts that the person is armed and dangerous. *See Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Ybarra v. Illinois,* 444 U.S. 85, 93, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *Worthey v. State,* 805 S.W.2d 435, 438 (Tex.Crim. App.1991); *Spillman v. State,* 824 S.W.2d 806, 809 (Tex.App.—Austin 1992, pet. ref'd). This exception to the probable cause requirement is a narrow one. *Spillman,* 824 S.W.2d at 809. While an officer need not be absolutely sure that the person he frisks is armed, the specific facts must amount to more than a mere hunch or suspicion. *Terry,* 392 U.S. at 27, 88 S.Ct. 1868. The purpose of a limited weapons frisk after an investigatory stop is not to discover crime, but to allow the peace officer to pursue the investigation without fear of violence. *Davis v. State,* 829 S.W.2d 218, 220 (Tex.Crim.App. 1992).

In reviewing the county court at law's ruling on the motion to suppress, we will defer to its factual determinations that are supported by the record. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). But because the resolution of the constitutional issue does not turn on an evaluation of the credibility and demeanor of the witnesses, we will review de novo the court's application of the law to the facts. *Id.; see also Loserth v. State,* 963 S.W.2d 770, 773 (Tex.Crim.App. 1998).

The encounter between the two police officers and the Sikes brothers took place in midafternoon. Elrod's only reason for stopping Mark Sikes's automobile was the suspicious conduct he observed in the parking lot.

Crim.App.1997). Because this argument is not fully developed in appellant's brief and because we sustain appellant's points of error on another ground, we do not address this issue.

There is no evidence to suggest that either Mark or Richard Sikes was anything other than cooperative with the police. Although Elrod saw containers of alcohol in the car, he did not suspect Mark Sikes of driving while intoxicated. Appellant Richard Sikes was apparently intoxicated, but neither officer testified that he believed appellant might be a danger to himself or others. *See* Tex. Penal Code Ann. § 49.02(a) (West 1994). As Elrod began his search of the car, the Sikes brothers were standing at some distance from the vehicle under Rodriguez's observation. At Rodriguez's request, the brothers had emptied their pockets (although, apparently unknown to Rodriguez, appellant did not do so completely). Neither officer testified that he observed any furtive gestures or saw any suspicious bulges that might have been a weapon. When asked directly why he had feared for his safety, Rodriguez did not articulate any specific fact supporting his claimed apprehension. Instead, he indicated that the pat-down was simply a matter of routine, something that he did whenever he was involved in the roadside search of an automobile.

The State argues that it was not necessary for Rodriguez to identify specific words or acts by appellant that indicated he might possess a weapon, so long as the officer was shown to have reasonable grounds for the pat-down search. *See Salazar v. State*, 893 S.W.2d 138, 143 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd untimely filed). In *Salazar*, the defendant was detained and frisked after he attempted to flee from police officers executing a narcotics search warrant. The court of appeals concluded that the officer who frisked the defendant had a reasonable basis for concluding that his safety was in danger because there was probable cause to believe that narcotics were being sold on the premises, narcotics trafficking is a violent enterprise, the premises had not been secured, and the defendant fled when he saw the police. *Id.* at 143–44. No comparable factors are present in the cause before us. Elrod and Rodriguez were not acting on the basis of probable cause, the officers were not in an unfamiliar or inherently dangerous place, and the brothers did not attempt to flee.

The State cites two facts from which it contends Rodriguez could reasonably conclude that a frisk of appellant was necessary for officer safety. First, Rodriguez testified that the two brothers put their hands in their pockets after being told not to do so. Second, appellant had the plastic bag in his pocket after being told to empty his pockets. The second fact can be quickly disposed of because there is no evidence that Rodriguez knew or suspected that the bag, or any other object, was in appellant's pocket before frisking him. To the contrary, Rodriguez testified that he found the bag during the frisk.

The State argues that appellant's failure to keep his hands out of his pockets reasonably warranted the protective pat-down, analogizing the situation to that in *Worthey*. In that case, the defendant arrived at a house being searched pursuant to a warrant at 3:00 a.m. She was confronted by a police officer who told her to keep her hands where they were. She immediately clutched the purse she was carrying and turned so that the purse and her right hand were away from the officer. Believing that the defendant might have a weapon in her purse, the officer took it from her and "frisked" it. The Court of Criminal Appeals held that under the circumstances, the defendant's conduct reasonably warranted the officer's action. 805 S.W.2d at 437–38. We believe that the time and other circumstances of the encounter distinguish *Worthey* from the cause before us. In particular, Rodriguez had already ordered appellant to empty his pockets and had no apparent reason to believe that any weapon might remain there.

The State also refers us to *Valencia v. State*, 820 S.W.2d 397 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). The defendant in that case was the passenger in a van stopped in a high crime area by police officers who suspected the driver was intoxicated. While one of the officers dealt with the driver, the second officer approached the defendant, who was not wearing a seat belt. The defendant had no identification and disregarded the officer's instruction to keep his hands where they could be seen. The officer told the defendant he was under arrest for

failing to wear a seat belt and ordered him out of the van, where he frisked him for weapons and discovered cocaine. The court of appeals held that the defendant was lawfully searched incident to his arrest, adding that the frisk was reasonably warranted for officer safety. *Id.* at 399–400. The latter holding was dicta, and in any event the frisk was supported by more than the defendant's mere failure to keep his hands visible: the encounter took place in a high crime area, the defendant had no identification, and the officer had probable cause to arrest.

The other cases cited by the State are also distinguishable. In *Spillman,* the defendant was the passenger in an automobile stopped for speeding at 1:00 a.m. The defendant shook visibly and avoided eye contact while conversing with the police officer, and made statements to the officer that conflicted with statements made by the driver of the car. Further, the officer saw a square, hard bulge in the defendant's pants that caused the officer to suspect he was concealing some foreign object. This Court concluded that the officer had a reasonable belief based on objective facts that the defendant might be armed and dangerous, and was justified in frisking him for safety before searching the car. 824 S.W.2d at 810–11.

In *Wood v. State,* 515 S.W.2d 300 (Tex. Crim.App.1974), the defendant was a passenger in a car stopped at 3:00 a.m. near the scene of a reported burglary. The other occupants of the car generally matched the description of the burglary suspects. The defendant had no identification. When the defendant got out of the car, he was wearing a long jacket that prevented the officer from seeing whether he might be concealing a weapon in his waistband. He also carefully watched the officer's movements. The Court of Criminal Appeals held that these facts justified a protective frisk. *Id.* at 305.

In *Ramirez v. State,* 672 S.W.2d 480 (Tex. Crim.App.1984), a police officer was approached by a citizen and told that there was an armed man in a nearby bar. The officer went directly to the bar and saw the defendant, who matched the detailed description the officer had been given. The officer approached the defendant and saw a bulge in his pocket. The court concluded that the officer's protective frisk of the defendant was lawful. *Id.* at 482.

In *Ramsey v. State,* 806 S.W.2d 954 (Tex. App.—Austin 1991, pet. ref'd), the defendant was the driver of an automobile stopped at 2:00 a.m. for observed traffic offenses. As the officer walked toward the stopped car, he saw the defendant throw a shaving kit onto the floorboard as if trying to hide it. After removing the defendant from the vehicle, the officer took the shaving kit from the car and looked inside, where he found narcotics. Citing the hour, the fact that the officer was alone, and the defendant's denial of ownership of the shaving kit, this Court concluded that the objective facts warranted a reasonable belief that there might be a weapon in the kit and that the defendant might pose a danger to the officer if he were permitted to reenter his car. *Id.* at 958.

■ In this cause, Rodriguez's only stated justification for frisking appellant was that it was his routine procedure to do so. Constitutional protections against unreasonable searches cannot be whittled away by police regulations or standard operating procedure. *Salazar,* 893 S.W.2d at 143 (*citing Benavides v. State,* 600 S.W.2d 809, 812 (Tex.Crim.App. 1980)). Unlike the cases discussed above, there are no objective, articulable facts in the record before us to support Rodriguez's professed concern for his safety. Even when the evidence is viewed in the light most favorable to the court's ruling, the State failed to prove that the pat-down search of appellant was constitutionally justified. Because the seizure of the marihuana was the fruit of the unlawful frisk, the county court at law erred by overruling the motion to suppress.

The points of error are sustained, the order deferring adjudication is reversed, and the cause is remanded to the county court at law.