**Phillip George O'HARA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–98–00342–CR.

Court of Appeals of Texas, San Antonio.

Jan. 29, 1999.

Gray Scoggins, Law Office of Gray P. Scoggins, Alice, for Appellant.

Joe Frank Garza, District Attorney, Alice, for Appellee.

Before CATHERINE STONE, Justice, PAUL W. GREEN, Justice and KAREN ANGELINI, Justice.

## OPINION

KAREN ANGELINI, Justice.

### Nature of the case

A jury found Phillip George O'Hara guilty of the offense of possession of cocaine and assessed punishment at two years confinement. In his two issues on appeal, O'Hara alleges that the court erred in denying his motion to suppress.

### Factual Background

Trooper Muhler stopped O'Hara because the side marker lamps on his 18–wheeler truck were not working as required for a commercial motor vehicle. Trooper Muhler approached O'Hara and told him that he was going to perform an inspection of the truck. When Trooper Muhler inspected the sleeper portion of the truck, he noticed a suitcase and asked O'Hara what it contained. O'Hara responded that the suitcase contained papers and denied Trooper Muhler's request to look inside. At this point, Trooper Muhler told O'Hara to gather his paperwork and they would go to the patrol car where he would write the inspection report. Trooper Muhler asked O'Hara to leave his belt knife in the truck. O'Hara complied with the request and followed Trooper Muhler to the patrol car.

Trooper Muhler told O'Hara that he was going to allow him to sit in the front seat of the patrol car, but needed to pat him down first to make sure he did not have any weapons. Trooper Muhler patted down O'Hara's rear pockets and front right pocket and did not find any weapons. When Trooper Muhler attempted to pat down O'Hara's front left pocket, O'Hara stepped back and blocked the pocket with his hands. Trooper Muhler testified that this reaction scared him and made him believe that the front left pocket contained a weapon. He then handcuffed O'Hara and patted down the front left pocket.

Trooper Muhler testified that he felt a hard metallic object and reached into O'Hara's pocket to pull the object out. Trooper Muhler pulled out a rolled up plastic bag which contained some rolling papers, a small electrical "alligator clip," and some marijuana. O'Hara was then placed under arrest and handcuffed. Trooper Muhler called for back up and began to inventory the truck. When Trooper Muhler looked back over at O'Hara, O'Hara was using his shoulder to remove his cap. Trooper Muhler inspected the cap and found a small triangular plastic bag containing a white powdery substance inside the brim of the cap. Trooper Muhler then looked on the ground around O'Hara and found six more small triangular bags. The white powdery substance was determined to be cocaine.

### Motion to suppress

■ In his first issue, O'Hara alleges that the court erred in not suppressing the cocaine as the fruit of an illegal arrest for possession of marijuana because the marijuana was seized in violation of article 1, section nine of the Texas Constitution and the Fourth and Fourteenth Amendments of the United States Constitution. When the resolution of a suppression issue does not depend on an evaluation of credibility or demeanor, the court's determination of the law and the application of the law to the facts is reviewed de novo. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

■ O'Hara argues that under the circumstances Trooper Muhler was not authorized to perform a pat-down search. An officer conducting a weapons search must justify his decision to search with specific articulable facts which, taken together with rational inferences from those facts, would cause a reasonably prudent person to believe his safety or that of others was in danger. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). While an officer need not be positive that a person is armed, the specific facts must amount to more than a mere hunch or suspicion. *Id.* at 27, 88 S.Ct. 1868. The purpose of a limited search for weapons is not to discover evidence of a crime, but to allow the officer to pursue the investigation without the fear of violence. *Davis v. State*, 829 S.W.2d 218, 220 (Tex. Crim.App.1992) (quoting *Wood v. State*, 515 S.W.2d 300, 306 (Tex.Crim.App.1974)). The Court of Criminal Appeals has listed some factors to be considered in determining

whether a weapons search is justified. The factors include: (1) flight; (2) furtive gestures and sudden movements toward a pocket where a weapon might be concealed; (3) threats and attempts to resist detention; (4) the commission of a criminal offense; and, (5) intoxication. *Worthey v. State*, 805 S.W.2d 435, 438–39 (Tex.Crim.App.1991) (citing *Lippert v. State*, 664 S.W.2d 712, 721 (Tex.Crim. App.1984)).

■ O'Hara argues that Trooper Muhler did not testify to any specific articulable facts which would cause a reasonably prudent person to believe his safety was in danger. Trooper Muhler testified that for his own safety, he routinely performs a pat-down search to check for weapons before allowing an individual into his patrol car. Trooper Muhler did not testify that he was afraid of O'Hara or that he thought he was armed. In fact, during cross-examination at trial, Trooper Muhler testified that he was not afraid of O'Hara. In a recent opinion, this court pointed to an officer's testimony that he had no fear of the defendant as a factor in determining that the record was devoid of any specific and articulable facts which would cause a reasonably prudent person to believe his safety was in danger. *See Matter of A.D.D.*, 974 S.W.2d 299, 306 (Tex.App.—San Antonio 1998, no pet.). The State's brief points to the fact that O'Hara had been carrying a knife and that the stop occurred in a remote location at 3:30 in the morning. However, Trooper Muhler offered no testimony to indicate that these specific facts caused him to believe his safety was in danger.

The following cases provide examples of articulable facts that support a protective weapons search. *See Worthey*, 805 S.W.2d at 438 (defendant approached house where search warrant was being executed, officer told her to not move her hands but she moved her right hand and purse away from the officer's view); *Garcia v. State*, 967 S.W.2d 902, 906 (Tex.App.—Austin 1998, no pet.) (dispatch reported that escaped robbers had a rifle and the occupants of the car took five minutes to emerge from their vehicle); *Strickland v. State*, 923 S.W.2d 617, 620 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (nervousness, bulge in pants pocket, and defendant repeatedly attempting to put hands in his pocket despite officer's warning to remove them); *Graham v. State*, 893 S.W.2d 4, 7 (Tex.App.—Dallas 1994, no pet.) (startled look on face, reaching under the driver's seat); *State v. Vasquez*, 842 S.W.2d 841, 843–44 (Tex.App.—Beaumont 1992, pet. ref'd) (dispatch identified vehicle as one that was suspected to have been used by gang members in a drive-by shooting earlier in the day).

In *Zeno v. State*, the State argued that the protective search was for the officer's safety but the court found that the search was not justified because there was no evidence that the officer had a reasonable belief, based on an individualized suspicion, that the person was armed. *Zeno v. State*, 862 S.W.2d 165, 166 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). In a recent decision, the Third Court of Appeals found a pat-down search to be unjustified under facts similar to ours. *Sikes v. State*, 981 S.W.2d 490 (Tex.App.—Austin 1998, n pet. h.). In *Sikes*, a police officer saw a man stick his hand into a plastic window of a Jeep and then return to a waiting vehicle. *Id.* at 491. Believing that a burglary might have occurred, the officer stopped the vehicle and was told that the Jeep belonged to the man's girlfriend and he had left her a note. The officer saw some alcohol bottles in the front seat and asked to search the car but the driver refused. Although the passenger appeared to be intoxicated, the driver did not. *Id.* The officer assured the driver that he would not be in trouble for the alcohol and the driver then consented to the search.

While the driver and the passenger were standing on the side of the road, the officer asked them to empty their pockets. The officer then performed a pat-down search of the two men. The officer testified that he performed the search for officer safety and that he does a pat-down search whenever he searches a vehicle. *Id.* During the pat-down, the officer observed a plastic bag in the defendant's pocket, pulled it out, and found that it contained marijuana. The court of appeals stated that the evidence showed that the men had been cooperative and had not made any furtive gestures and there was no

evidence that the police saw any suspicious bulges. *Id.* at 492–93. Further, when the officer was asked why he feared for his safety, he answered that a pat-down search was simply a matter of routine when he searched a vehicle. *Id.* at 491. The court of appeals stated that "constitutional protections against unreasonable searches cannot be whittled away by police regulations or standard operating procedure." *Id.* at 494. The court found that the officer's justification of routine did not constitute the specific articulable facts necessary to justify a search. *Id.*

In this case, Trooper Muhler's only basis for the pat-down search was that it was his routine to pat-down someone before allowing him into his patrol car. However, as stated by the Austin Court of Appeals in *Sikes*, routine does not justify a pat-down search. Therefore, we find no specific articulable facts to suggest that Trooper Muhler reasonably believed that O'Hara was armed and dangerous. Thus, we find that the pat-down search was illegal.

■ Further, we find that the cocaine should have been suppressed as the fruit of the illegal search. *See Sossamon v. State,* 816 S.W.2d 340, 346 (Tex.Crim.App.1991) (holding that indirect fruits of an illegal search should be suppressed). As a result of the pat-down search, Trooper Muhler discovered marijuana and placed O'Hara under arrest. While under arrest, Trooper Muhler observed O'Hara playing with his hat and found the cocaine. If O'Hara had not been arrested, Trooper Muhler would not have discovered the cocaine. Thus, we find that the court erred in failing to suppress the cocaine as the fruit of an illegal search. We sustain O'Hara's first issue and therefore need not reach his second issue in which O'Hara alleged that the pat-down search exceeded the scope of a protective weapons search.

We reverse and remand the judgment for proceedings consistent with this opinion.