

# NUMBER 13-12-00408-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**MARCO ANTONIO REBELES,**                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                  **Appellee.**

### On appeal from the County Court at Law No. 3
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Marco Antonio Rebeles appeals his conviction of possession of brass knuckles, a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 46.05(a)(5), (e) (West, Westlaw through 2013 3d C.S.). After a jury found appellant guilty, the trial court assessed punishment at six-months' confinement in county jail, suspended the sentence, and placed appellant on eighteen-months probation. By four related issues, which we

construe as one, appellant argues the search that produced the brass knuckles was an unreasonable search in violation of the United States and Texas Constitutions.[1] We reverse and remand.

## I.  BACKGROUND[2]

At about two in the morning, the Harlingen Police Department received a complaint regarding loud music in a residential area and dispatched Officer Guadalupe Cerda.  The music was coming from an apartment.  Officer Cerda parked his patrol unit on a nearby street and approached the apartment on foot.

As he approached, Officer Cerda observed appellant and two other men outside the apartment.  Officer Cerda testified that appellant was sitting "reclined" on the ground outside the apartment garage and that two other men stood by a vehicle, which was the source of the loud music.  Officer Cerda decided to frisk the three men.  While frisking appellant, Officer Cerda felt a blunt object.[3]  Officer Cerda asked appellant what the

---

[1] Appellant presented the issues as follows:  The trial court erred and abused its discretion in not granting appellant's motion to suppress because:  (1) there can only be a search during a warrantless arrest and not an arrest after a warrantless search; (2) the police officer was applying the law in an unconstitutional manner because the police took action when no law was being violated and this is against the Fourth Amendment of the U.S. Constitution and Article 1, Section 9 of the Constitution of the State of Texas; and (3) there were no grounds for the officer to conduct the search because there was no arrest before search, and there was no arrest before the search because there was no crime.  By a fourth issue, appellant contends the trial court abused its discretion because

> it used evidence (the brass knuckles) that was obtained in a manner which was against the mandates of the statutes, and it was unconstitutionally and unlawfully obtained and thereby such evidence is not allowed as a matter of law pursuant to article 38.23 of the Texas Code of Criminal Procedure to be used as evidence.

Article 38.23 states that trial courts shall not admit evidence that was seized in violation of the Constitutions of the United States or Texas.  TEX. CODE CRIM. PROC. ANN. art. 38.23 (West, Westlaw through 2013 3d C.S.).

[2] The background information comes from the record on appellant's pre-trial motion to suppress.
[3] The record does not reveal where on appellant the brass knuckles were found.

2

object was, and appellant answered that it was brass knuckles. Officer Cerda arrested appellant for possessing the brass knuckles.

At the suppression hearing, Officer Cerda repeatedly characterized the frisk as a general safety precaution. For example, in Officer Cerda's first mention of the frisk, he testified, "I observed them drinking with beer bottles in their hands. You know, it's a safety precaution to pat them down, for my safety and their safety." The following exchange occurred during cross-examination by the defense:

Q  Now, the—the guy that was sitting—I mean, the defendant was sitting down on the grass with his back to the wall. How did that made [sic] you to fear for—what did—exactly what did he do to put you in fear?

A  It's just a safety precaution, sir.

Q  I know, but there was—just a precaution, but there was nothing that he did that would even indicate—he's sitting down. Did you ask him to stand up?

A  Yes, sir. I asked him if, you know, "Could you stand up so I can pat you down."

Q  So he's sitting down next to the wall, minding his own business. You show up and ask him, "Please stand up so I can frisk you"?

A  "Pat you down," yes, sir.

Q  And is that because you had some sort of fear?

A  Like I said, it's a safety precaution, sir.

Earlier, defense counsel had asked Officer Cerda why, upon approaching the three men, Officer Cerda immediately frisked them. Officer Cerda replied, "For my safety and the safety of them." Defense counsel probed further, "And what is it that you feared? I mean, they were not being belligerent, I mean." Officer Cerda answered, "Well, in my

3

experience, you know, things happen in a second." Defense counsel then asked what circumstances made this situation unique, and Officer Cerda responded, "Like I said, on this case, you know, I felt there was a safety issue."

On re-direct, the State asked Officer Cerda whether he was afraid. Again, Officer Cerda emphasized, "I don't recall exactly . . . but it was a safety precaution for me to get patted down [sic]." The State then asked whether he had feared they had something hidden on themselves, and Officer Cerda responded, "They possibly could have used the bottles in their hands as weapons." On re-cross, however, Officer Cerda acknowledged the men had put the beer bottles down prior to the frisk. In the following exchange from re-cross examination, Officer Cerda again characterized the frisk as a mere precaution:

Q    So the bottom line is that you, again, being honest in what you're
     saying is that this was just a basic precaution, that's it?

A    Yes, sir.

Q    You were not in fear of anything. You just kind of took it up front?

A    A safety precaution.

Q    Safety precaution.

A    Because they could have weapons in their pockets.

Aside from Officer Cerda's justification of the frisk as a general precaution, a thorough review of the record uncovers six specific grounds, not found together, that Officer Cerda also used to justify the protective frisk: (1) it was dark (the area was poorly lit); (2) it was in the middle of the night; (3) he was outnumbered; (4) the three men were drinking; (5) the three men were each holding a beer bottle; and (6) the three men were larger than himself. During cross-examination, Officer Cerda acknowledged that he did

4

not recall whether other officers accompanied him or whether the three men were intoxicated. He also noted that the three men discarded their beer bottles before he frisked them, and he considered the men were "very cooperative."

## II. *TERRY* FRISK

Appellant contends Officer Cerda's frisk was an unreasonable, warrantless search because it was not incident to arrest. Appellant argues no crime preceded the search. The State defends the frisk as reasonable under *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Given the facts of this case, we agree *Terry* governs our analysis.[4]

### A.    Standard of Review

In reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2008). When the trial court makes no explicit fact findings, we infer the necessary fact findings that would support the ruling if the record evidence (viewed in the light most favorable to the trial court's ruling) supports the implied fact findings. *Garcia-Cantu*, 253 S.W.3d at 241; *Wiede,* 214 S.W.3d at 25. We afford almost total deference to a trial court's determination of historical facts that the record supports, especially when the court's implicit fact-finding is based on an evaluation of witness credibility and demeanor. *Garcia-Cantu*, 253 S.W.3d at 241; *Wiede*, 214 S.W.3d at 24–25. We review the trial court's legal rulings de novo unless its supported-by-the-record explicit fact findings are

---

[4] The federal *Terry* standard also applies to determinations of reasonableness under Article 1, Section 9 of the Texas Constitution. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997); *Davis v. State*, 829 S.W.2d 218, 221 (Tex. Crim. App. 1992) (en banc). Accordingly, we analyze appellant's federal and state claims both under the parameters of *Terry.*

dispositive of the legal ruling. *State v. Kelley*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

**B.      Applicable Law**

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)); *Gonzalez v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *see* U.S. CONST. amend. IV; TEX. CONST. art. 1, § 9. *Terry* established a warrant exception, allowing an investigating officer to conduct a warrantless frisk of a person when the officer has a justified belief that the individual is armed and presently dangerous. *See Terry*, 392 U.S. at 24; *Carmouche v. State*, 10 S.W.3d 323, 329 (Tex. Crim. App. 2000). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence . . . ." *Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002) (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)). The United States Supreme Court has been "careful to maintain" the "narrow scope" of the *Terry* frisk. *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979); *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000).

A *Terry* frisk is justified only when an officer can "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant intrusion." *Terry*, 392 U.S. at 21; *see Balentine*, 71 S.W.3d at 769; *Carmouche*, 10

S.W.3d at 329. The officer need not be absolutely certain the person is armed; the issue is whether a reasonable person would justifiably believe that he or others are in danger. *Balentine*, 71 S.W.3d at 769; *O'Hara*, 27 S.W.3d at 551. There is no legal requirement the policeman feel scared by the threat of danger. *O'Hara*, 27 S.W.3d at 551; *see State v. Sheppard*, 271 S.W.3d 281, 288 (Tex. Crim. App. 2008). The validity of the search turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting the officer at the time. *Sheppard*, 271 S.W.3d at 288; *Balentine*, 71 S.W.3d at 769; *O'Hara*, 27 S.W.3d at 551. An unparticularized suspicion or "hunch" is insufficient justification. *Terry*, 392 U.S. at 27; *Williams v. State*, 921 S.W.2d 609, 612 (Tex. Crim. App. [Panel Op.] 1981). Similarly, a *Terry* frisk is unjustified when conducted solely as a matter of routine. *O'Hara*, 27 S.W.3d at 553; *see Sikes v. State*, 981 S.W.2d 490, 494 (Tex. App.—Austin 1998, no pet.).

## C.    Discussion

Officer Cerda repeatedly insisted that the frisk was a mere safety precaution, even in response to the State and defense attorneys' respective attempts to uncover what, if any, articulable observation prompted the weapons search. The characterization of the frisk as a simple precaution constitutes a justification based on routine rather than a justified belief that appellant was armed or dangerous. To the extent Officer Cerda justified the frisk on that ground alone, it was insufficient justification. *See O'Hara*, 27 S.W.3d at 553; *Sikes*, 981 S.W.2d at 494; *see also Terry*, 392 U.S. at 21. We do not, however, automatically reverse because the frisk was defended, in part, as routine; "sometimes, even when an officer erroneously conducts the pat-down as a matter of

7

routine, the objective facts will nevertheless justify the pat-down." *O'Hara*, 27 S.W.3d at 554. Instead, we look to the surrounding facts to determine whether a reasonable person in the officer's position would have been justified in frisking for weapons. *Id.*

Officer Cerda testified, albeit disjointedly and at the State's prompting, to other factors underlying the decision, which we now review. As mentioned earlier, Officer Cerda justified the frisk on six specific grounds, but his subsequent testimony undermined three of them. First, although Officer Cerda testified he was outnumbered, he also noted that he could not recall whether other officers accompanied him. Second, Officer Cerda claimed to frisk the men because they were holding beer bottles, but later acknowledged they discarded the bottles before he frisked them. Third, Officer Cerda frisked the men because they were drinking, but failed to recall whether they were intoxicated. Despite Officer Cerda's hedging, however, we are constrained to view the evidence in the light most favorable to the trial court's ruling, infer the necessary findings that support the ruling, and afford almost total deference to the trial court's determination of historical facts. *See Garcia-Cantu*, 253 S.W.3d at 241; *Wiede*, 214 S.W.3d at 24–25. Applied here, we infer the trial court concluded Officer Cerda was, in fact, outnumbered three-to-one and concerned that the men held bottles and were drinking.[5]

Nevertheless, we hold that the six articulated grounds—(1) it was dark (the area was poorly lit); (2) it was in the middle of the night; (3) he was outnumbered; (4) the three

---

[5] We also note that appellant controverted some of the grounds, testifying that he was not drinking that night; that he was not holding a beer bottle; and that a female officer accompanied Officer Cerda. The trial court was free to disbelieve this testimony, however, and we defer to its implied determination of historical facts and assessment of witness credibility. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2008).

men were drinking; (5) the three men were each holding a beer bottle; and (6) the three men were larger than himself—were insufficient to justify the *Terry* frisk. *See Kelley*, 204 S.W.3d at 818 (holding we review the legal rulings de novo). These six factors, in the aggregate, do not establish a justified belief that a person is armed and dangerous. *See Terry*, 392 U.S. at 24; *Carmouche*, 10 S.W.3d at 329. These factors would also arise, for example, in the classic situation where officers are dispatched to a loud fraternity or sorority party in the middle of the night, which surely would not justify the officers frisking all attendees for weapons under the "narrow scope" of *Terry*. *See Ybarra*, 444 U.S. at 93; *O'Hara*, 27 S.W.3d at 551.

This is not to suggest that some of the foregoing factors are wholly irrelevant or never contribute to a reasonable belief that a person is armed and dangerous. They must, however, somehow combine to give articulable cause for a protective frisk. Here, there is no evidence that Officer Cerda ever believed appellant or the others were armed or dangerous. When pressed, Officer Cerda insisted the frisk was merely precautionary, which we have already ruled was an inadequate justification. Moreover, this is not a case where a dangerous offense prompted the investigation, and there was no testimony that this was a high-crime neighborhood. As Officer Cerda approached the apartment, he saw appellant sitting "reclined" on the ground. There is no testimony appellant or the other men threatened or by their conduct caused Officer Cerda to believe they were armed and dangerous; in fact, Officer Cerda testified that they were "very cooperative." Nevertheless, upon approaching appellant, Officer Cerda immediately ordered appellant to stand up off the ground, and frisked appellant for weapons.

9

When defense counsel asked Officer Cerda why he immediately frisked appellant, Officer Cerda replied, "Well, in my experience, you know, things happen in a second." Defense counsel then asked what circumstances made the situation unique rather than routine, and Officer Cerda responded, "I felt there was a safety issue." This type of unparticularized suspicion is characteristic of Officer Cerda's testimony at the hearing,[6] and it is insufficient justification for a protective frisk. *See Terry*, 392 U.S. at 27; *Williams*, 921 S.W.2d at 612.

After reviewing the evidence in the light most favorable to the trial court's ruling, we conclude the record is wholly devoid of the requisite "specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant" the protective frisk of appellant. *See Terry*, 392 U.S. at 21; *see Balentine*, 71 S.W.3d at 769; *Carmouche*, 10 S.W.3d at 329. Therefore, we sustain appellant's issues.

## III. CONCLUSION

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of April, 2014.

---

[6] Consider also, for example, Officer Cerda's explanation that he frisked the men as a safety precaution "[b]ecause they *could* have weapons in their pockets." (Emphasis added.)