**Opinion filed September 15, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00234-CR

_____

## JAMES COLE HANLON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court**

**Eastland, Texas**

**Trial Court Cause No. 1300341**

## M E M O R A N D U M   O P I N I O N

After the trial court denied his motion to suppress, James Cole Hanlon pleaded guilty to the misdemeanor offense of possession of marihuana in an amount of less than two ounces. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(1) (West 2010). The trial court, pursuant to a plea agreement, assessed Appellant's punishment at confinement for a term of sixty days in the Eastland County Jail and

a fine in the amount of $500. In a single issue, Appellant challenges the trial court's denial of his motion to suppress. We affirm.

In Appellant's pretrial motion to suppress, he alleged that he was searched without probable cause, that the search exceeded the scope of a search permitted under *Terry v. Ohio*, 392 U.S. 1 (1968), and that, therefore, the evidence seized during the search should be suppressed. After a hearing, the trial court ruled that the officer articulated reasonable suspicion by pointing to specific and articulable facts and denied Appellant's motion to suppress. The trial court did not enter findings of fact or conclusions of law.

Appellant's sole issue on appeal is whether the officer, who had reasonable suspicion to make an investigative traffic stop of Appellant, then developed such a reasonable belief that Appellant was armed and dangerous as to justify the officer's pat-down search of Appellant. Appellant contends that the officer did not articulate specific facts that would justify a search of Appellant's person and that, therefore, the trial court erred when it denied his motion to suppress.

Trooper Robert McGrath of the Texas Department of Public Safety was the only witness who testified at the hearing on the motion to suppress. He testified that he was patrolling the eastbound lanes on Interstate 20 near Cisco when Appellant's vehicle caught his attention. Appellant gave a signal to get on the highway but it was late, and in addition, he was driving below the speed limit. Trooper McGrath ran Appellant's license plates through police dispatch and discovered that Appellant's license plates were expired; therefore, he initiated a traffic stop. When he approached the vehicle, he smelled an odor coming from inside the vehicle that he believed was "K2 or spice."

Trooper McGrath testified that he had not had any dealings with Appellant before this stop. He believed that Appellant was acting nervous; Appellant was fidgeting around in the car trying to find papers. Appellant could not present his

2

driver's license.  Trooper McGrath further testified that Appellant's hands were moving and shaking and that Appellant was continuously breaking eye contact with him.  He explained that "everybody has a nervousness to an extent, but not to that extent."  Appellant's nervousness "was above normal."

Trooper McGrath went back to his patrol car to prepare the warnings that he was going to issue Appellant.  When he returned to Appellant's vehicle, he asked Appellant and Appellant's passenger to step out of the car so that he could issue the warnings and talk to Appellant about the odor that was coming from the vehicle.  Trooper McGrath testified that Appellant became more nervous; his hands were shaking, he was constantly looking around, and he failed to "stay in contact" with the trooper.  Trooper McGrath asked Appellant if he could search his car, and Appellant consented.  Before Trooper McGrath searched the car, he conducted a pat-down search of Appellant and Appellant's passenger for safety purposes.

Trooper McGrath explained that he has always conducted a pat-down search when he searched a person's vehicle: "If I'm going to search a vehicle, I always pat down everybody."  He agreed that Interstate 20 was a known drug corridor and that many felony arrests were made on that highway.  He had personally made felony arrests on that highway.  He also testified that Interstate 20 was a busy, dangerous highway.  He testified that it was not unusual for a person that was in possession of drugs to also be in possession of weapons and that he used caution when he dealt with drug offenders because some drug offenders were violent people.

Trooper McGrath began the pat-down search by pulling up Appellant's pants at the waistline so that he could "relocate [Appellant's] pants line"; Appellant "had his pants located lower," and Trooper McGrath "did not want to touch any private areas."  When he lifted Appellant's pants, he observed something slide out of one of the legs of Appellant's pants.  He continued the pat-down search and then retrieved the item that fell out of Appellant's pants.  The item was a baggie that contained a

green leafy substance that had the odor of marihuana. Based on his training and experience, Trooper McGrath believed that the substance was indeed marihuana, and he placed Appellant under arrest. When Trooper McGrath conducted a pat-down search of the passenger, he found a pocket knife.

On cross-examination, Trooper McGrath testified that Appellant was polite and cooperative. He did not ask Appellant for consent to search Appellant's person. He advised Appellant that he was going to pat him down for officer safety and for Appellant's safety. Trooper McGrath had no reason to believe that Appellant was a person who normally carried weapons because he did not know Appellant; however, he believed "everybody to be armed." Appellant was not being aggressive and did not give Trooper McGrath any indication that he belonged to a gang. When asked if he could testify to anything specific about Appellant that led him to believe that Appellant was armed, Trooper McGrath responded, "I treat every person I stop as if they are armed." He emphasized that Appellant was nervous and that it was standard operation to conduct a pat-down search.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Even when the trial court does not make explicit findings of historical fact, we review the evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings to support its ruling. *Carmouche*, 10 S.W.3d at 327–28. We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, such as whether there was reasonable suspicion to support a pat-down search, we

4

review the trial court's actions de novo. *Id.*; *State v. Sheppard*, 271 S.W.3d 281, 286–87 (Tex. Crim. App. 2008).

A police officer who has lawfully detained a person based upon reasonable suspicion may conduct a protective pat-down search of the person for weapons if the officer has a reasonable belief based on specific articulable facts that the person is armed and dangerous. *Carmouche*, 10 S.W.3d at 329. The officer does not need to be "absolutely certain that the individual is armed." *Worthey v. State*, 805 S.W.2d 435, 437 (Tex. Crim. App. 1991) (quoting *Terry*, 392 U.S. at 27). The question is whether a reasonably prudent person would believe that his safety or the safety of others was in danger. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000) (citing *Terry*, 392 U.S. at 27). We look to whether the facts, when viewed objectively, support a pat-down search, not at "the officer's subjective state of mind or his asserted rationale." *Sheppard*, 271 S.W.3d at 287.

The Court of Criminal Appeals has recognized that it is objectively reasonable for a police officer to believe that individuals involved in the "drug business" are armed and dangerous. *Griffin v. State*, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006) (citing *Carmouche*, 10 S.W.3d at 330). However, in its opinion on rehearing, the Court of Criminal Appeals instructed that its "opinion on original submission should not be characterized as holding that an objectively reasonable police officer may base a determination that his safety is in danger solely upon the basis that 'the suspect is a drug dealer.'" *Id.* at 411 (op. on reh'g). In addition to the fact that the officers in *Griffin* had reasonable suspicion to believe that the defendant was dealing drugs in a public place, there was also evidence that the defendant had been arrested for possession of cocaine two days prior to the pat-down search as well as evidence that the defendant moved his hand toward his pocket during the investigative detention. *Id.*

An officer's standard operation, without more, is also insufficient to justify a pat-down search. *See O'Hara,* 27 S.W.3d at 553 ("We reject the State's argument that routine alone is sufficient to justify a pat-down."). "[C]onstitutional protections against unreasonable searches cannot be whittled away by police regulations or standard operating procedure." *Id.* at 552–53 (quoting *Sikes v. State*, 981 S.W.2d 490, 494 (Tex. App.—Austin 1998, no pet.)). However, "sometimes, even when an officer erroneously conducts the pat-down as a matter of routine, the objective facts will nevertheless justify the pat-down." *Id.* at 554.

Here, although Trooper McGrath emphasized throughout his testimony that it was his standard procedure to conduct a pat-down search of an individual before he searched the individual's vehicle, he also provided other objective facts upon which a reasonably prudent person could base a belief that his safety or the safety of others was in danger. *See id.* at 551 (citing *Terry*, 392 U.S. at 27). The objective facts presented in this case were as follows: (1) Trooper McGrath suspected that Appellant possessed drugs; (2) it is not unusual for an individual that is in possession of drugs to also be in possession of weapons; (3) the highway on which the traffic stop occurred was a known drug corridor where many felony arrests had been made; (4) the stop was a roadside encounter; (5) Trooper McGrath was alone with two adult males—Appellant and his passenger—on the side of the road; (6) Appellant's hands were moving and shaking; (7) Appellant was constantly looking around and did not maintain eye contact with Trooper McGrath; and (8) Appellant's nervousness "was above normal."

The Court of Criminal Appeals has noted that "roadside encounters between police and suspects are especially hazardous." *Carmouche*, 10 S.W.3d at 330 (quoting *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)). Here, the facts not only show that the stop was a roadside encounter but also that it was a roadside encounter with two individuals and one officer on a busy and dangerous highway that was

6

known as a drug corridor. In *Sargent v. State*, 56 S.W.3d 720, 726 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd), the Fourteenth Court of Appeals held that the suspicion of drug activity, combined with the fact that the stop was a roadside encounter and the fact that the defendant failed to identify himself or produce any identification to the officers, were specific and articulable facts to justify the pat-down search. Appellant, in this case, was also suspected of possessing drugs and was unable to produce his driver's license.

In addition, although not relevant to whether there were objective facts to support a pat-down search, we note that Appellant consented to the search of his car and that, while he did not expressly consent to a pat-down search, he also did not object to the pat-down search. We hold that, based on the objective facts presented by the State, the State met its burden to show that the specific circumstances in this case supported a reasonable belief that Appellant was armed and dangerous. Therefore, Appellant's sole issue on appeal is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

September 15, 2016

Do not publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and McCall.[1]

Bailey, J., not participating.

---

[1]Terry McCall, Retired Justice, Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.