STATE of Texas, Appellant,

v.

Humayen SHAMSIE, Appellee.

No. 03–95–00752–CR.

Court of Appeals of Texas,
Austin.

Jan. 9, 1997.

**224**

Ken Oden, County Attorney, Giselle Horton, Brian Roark, Assistant County Attorneys, Austin, for appellant.

David A. Sheppard, Austin, for appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The State of Texas appeals from the trial court's order suppressing evidence seized from appellee, Humayen Shamsie. *See* Tex. Code Crim.Proc. § 44.01(a)(5) (West Supp. 1997). The trial court granted Shamsie's motion to suppress the evidence on the ground that it was obtained when officers detained Shamsie without reasonable suspicion, in violation of the federal and state constitutions and the Texas Code of Criminal Procedure. We will affirm the order.

## BACKGROUND

One early morning in July 1995, Shamsie was at a dance club, Eden 2000. Several officers of the Austin Police Department were on uniformed patrol of the club following undercover purchases of narcotics there the previous two evenings. As Officer Suarez walked down some stairs inside the club, he observed Shamsie remove a tissue from his left pocket, unfold it and place it back in his pocket. From his view the officer could

see that the tissue contained a tablet but could not tell what color or kind. When Shamsie left the club, Officer Suarez, accompanied by Officer Miller, followed him outside. As Shamsie stood on the sidewalk, Officer Suarez tapped Shamsie on the shoulder; as Shamsie turned to face him, the officer asked to see his identification. Shamsie, appearing surprised, reached into his pocket. Suarez testified that Shamsie pulled out the tissue and threw it on the ground. When a third patrolman, Officer Perez, reached for the tissue, Shamsie pulled away. After a brief struggle, the officers arrested Shamsie. Tests revealed the tablet to be Diazepam, a prescription drug also known as Valium. Shamsie was subsequently charged with misdemeanor possession of a controlled substance. *See* Tex. Health & Safety Code Ann. §§ 481.035, .104, .117 (West Supp.1997).

Shamsie filed a motion to suppress the evidence on the ground that it was seized in violation of his rights under the Fourth Amendment to the United States Constitution, Article I, Section 9 of the Texas Constitution, and Chapter 14 and Article 38.22 of the Code of Criminal Procedure. *See* U.S. Const. amend. IV, XIV; Tex. Const. art. I, § 9; Tex.Code Crim.Proc.Ann. ch. 14 (West 1977 & Supp.1997) & art. 38.22 (West 1979 & Supp.1997). After a pretrial hearing the trial court granted the motion, from which the State appeals.

### DISCUSSION

By two points of error, the State contends the trial court abused its discretion by applying the wrong legal standards in determining 1) *when* Shamsie was seized for constitutional purposes and 2) whether police had a constitutionally adequate basis for such seizure. Our review of a trial court's rulings at a suppression hearing is limited to determining whether the trial court abused its discre-

tion. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App.1996). As long as the trial court applies the appropriate legal standard, its findings of historical fact and application of the law to those facts are entitled to great deference on appeal. *State v. Carter*, 915 S.W.2d 501, 504 (Tex.Crim.App.1996). Even if this Court would have reached a different result, as long as the trial court's rulings are within the "zone of reasonable disagreement," we should not intercede. *DuBose*, 915 S.W.2d at 496.

### 1. *Seizure*

■■■ Both investigative detentions and arrests are seizures for purposes of constitutional analysis. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App.1995). Under both the federal and state constitutions, a seizure has occurred when a reasonable person would believe he or she was not free to leave *and* has actually yielded to a show of authority or has been physically forced to yield.[1] *Johnson*, 912 S.W.2d at 236. Law enforcement officers are permitted to approach citizens without constitutional justification in order to ask questions and even to request a consent to search. *Id.* at 235; *Holladay v. State*, 805 S.W.2d 464, 471 (Tex.Crim.App. 1991). If a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and merits no further analysis. *Johnson*, 912 S.W.2d at 235 (citing *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1551–52, 113 L.Ed.2d 690 (1991)). On the other hand, as soon as a show of authority would cause one to feel restrained, the encounter is nonconsensual and whether a seizure has occurred depends on whether the person flees or submits.[2] *Id.*

■■■ The State contends that, in confronting Shamsie, the officers did not show

---

**1.** Until recently, a seizure had taken place when a reasonable person facing a show of authority would not feel free to leave. *Johnson*, 912 S.W.2d at 232. In *Johnson*, however, the court of criminal appeals adopted the definition of seizure applied under the Fourth Amendment by the United States Supreme Court in *Hodari D.*, adding the requirement that the citizen actually yield to the officers' show of authority. *Id.* at 236.

**2.** Under the pre-*Hodari D.* standard, one's constitutional rights were implicated as soon as one would feel unfree to leave. *See Holladay*, 805 S.W.2d at 472 (consensual encounter not a detention); *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983) (nonconsensual encounter a detention).

sufficient authority to create a reasonable belief in Shamsie that he was not free to leave. While we recognize situations exist in which a police officer's request for identification amounts to a consensual encounter, *e.g.,* *Holladay,* 805 S.W.2d at 471; *White v. State,* 846 S.W.2d 427, 430–31 (Tex.App.—Houston [14th Dist.] 1992, no pet.), we think the trial court could rationally conclude that the police encounter with Shamsie constituted a non-consensual encounter. There were at least four officers around Shamsie when Officer Suarez touched him on the shoulder and requested his identification. Shamsie was between the club's entrance and the curb of the street where cars were parked when the officers approached. When asked whether Shamsie would have been able to leave, Officer Suarez responded that "it depends how hard he wanted to try," and that the officers would not have permitted it. Although an officer's intent to detain the suspect does not, alone, justify the suspect's belief that he is not free to leave, the totality of these circumstances created an atmosphere in which a reasonable person would not have felt free to leave.

 Evidence obtained as the fruit of an unconstitutional seizure is inadmissible. *Johnson v. State,* 658 S.W.2d 623, 627 (Tex. Crim.App.1983); *Giossi v. State,* 831 S.W.2d 887, 889 (Tex.App.—Austin 1992, pet. ref'd). Although protection from unreasonable searches and seizures does not extend to property that is abandoned before a seizure occurs, property abandoned in response to unlawful police conduct is subject to constitutional protection. *California v. Hodari D.,* 499 U.S. 621, 629, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991): *Hawkins v. State,* 758 S.W.2d 255, 257 (Tex.Crim.App.1988).

 The State contends that Shamsie did not actually yield to the officers until they arrested him.[3] *See Johnson,* 912 S.W.2d at 236. The State concludes that, because the trial court *could not* have found Shamsie yielded under these facts, it did not apply the law as set forth in *Johnson. See id.* Therefore, the State contends, Shamsie

voluntarily abandoned the tissue and its contents *before* he was seized and cannot claim constitutional protection from their seizure. *See Hawkins,* 758 S.W.2d at 257. We reject the State's argument.

 The record does not reveal the trial court's reasoning; we must, therefore, defer if any rational basis supports the trial court's conclusions in granting the motion to suppress. *See Carter,* 915 S.W.2d at 504–05; *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990). One reasonable construction of these facts is that Shamsie reached into his pocket to retrieve his identification but pulled out the tissue by mistake. The judge thus could have concluded that Shamsie had submitted to the show of authority when he reached into his pocket in response to the officer's request. By contrast, the court in *Johnson* held when a suspect confronted in a breezeway bolted and ran away as soon as he saw the police, a seizure had not occurred. 912 S.W.2d at 234. The record here contains no evidence that Shamsie attempted to flee, but merely states that he "pulled away" when Officer Perez rushed for the tissue at his feet, an understandable reaction. That a brief struggle ensued is not indicative of flight; the officers had not told Shamsie he was under arrest. We find the determination that Shamsie submitted to the show of authority reasonable under these facts; consequently, we must defer to the trial judge's ruling. We find no abuse of discretion.

Furthermore, we reject the State's reliance on *State v. Rose* for the proposition that Shamsie abandoned the tissue before any seizure occurred. *See* 844 S.W.2d 911, 912 (Tex.App.—Tyler 1992, no writ). In *Rose,* the court of appeals found that the trial court did not apply the standard for seizure under *Hodari D.,* as it did not have the benefit of *Johnson* before it. *Id.* at 913. The court of appeals stated:

Rose threw down the cocaine while still retreating from the officers, before submission to the officer's "show of authority,"

**3.** The State further contends Shamsie did not establish a reasonable expectation of privacy in the tissue or its contents and he had no standing

to complain of its seizure. Because the tissue was on Shamsie's person at the time the detention occurred, we reject this argument.

and before the application of any physical force to effect the stop.

*Id.* at 912. We have concluded that a rational construction of the facts before us is that Shamsie was submitting to the request for identification when he reached into his pocket.[4] Therefore, the detention and Shamsie's reaching into his pocket occurred simultaneously. Because we will uphold the trial court's finding that the officers lacked reasonable suspicion, Shamsie dropped the tissue in response to unlawful police conduct. *See Hawkins*, 758 S.W.2d at 259. Consequently, the evidence was properly suppressed. We overrule the State's first point of error.

### 2. *Reasonable suspicion*

By its second point of error, the State argues that any seizure was a constitutionally justified investigative detention. A police officer must have a reasonable and articulable basis for suspecting criminal activity to justify an investigatory detention. *Johnson*, 912 S.W.2d at 235; *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App.1991); *Giossi*, 831 S.W.2d at 889. The reasonable suspicion determination is based on the totality of the circumstances. *U.S. v. Sokolow*, 490 U.S. 1, 9, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989); *Holladay*, 805 S.W.2d at 473. "Reasonable suspicion" is "something more than an inchoate and unparticularized suspicion or hunch," *Holladay*, 805 S.W.2d at 469 (quoting *Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585), but it requires less information than is constitutionally required for probable cause to arrest. *Johnson*, 912 S.W.2d at 235. The relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts. *Holladay*, 805 S.W.2d at 469; *see also Angulo v. State*, 727 S.W.2d 276, 279 (Tex.Crim.App.1987).

■ The State again contends that the trial court applied the wrong legal standard. At the suppression hearing, defense counsel pointed to several types of nonprescription drugs that look like Diazepam.[5] Defense counsel then argued that "if an activity is as consistent with innocent activity as it is with criminal activity, that does not meet the standard of reasonable suspicion." The State urges that the trial judge's express comment that Shamsie's conduct was as consistent with innocent as with criminal activity is cause for reversal of the order. We disagree.

■ Considering the testimony at the suppression hearing, a rational trial court could conclude that the police lacked reasonable suspicion to detain. *See Carter*, 915 S.W.2d at 504–05. Officer Suarez testified that the fact that the pill was in a tissue and Shamsie carefully put it back in his pocket raised his suspicions. It was Suarez's opinion that it is "not usual" for people to carry prescription drugs in a tissue. The prosecution argued that the location, a club where previous narcotics arrests had been made, should raise the degree of suspicion. We agree that unusual activity in a place known for criminal acts may, under some circumstances, give rise to reasonable suspicion to detain a person. However, Officer Suarez testified that the pill could have been an over-the-counter product, such as allergy medication or pain reliever. The officer did not see Shamsie give the pill to or receive the pill from anyone, nor did he have any opinion on whether Shamsie was intoxicated. The sum of Suarez's testimony was that Shamsie had a pill in a tissue inside a club where arrests had been made. We find this an insufficient basis for reasonable suspicion that Shamsie had committed, or was about to commit, a crime. *See Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (circumstances described "very large category of presumably innocent" persons); *Holladay*, 805 S.W.2d at 473; *Crockett*, 803 S.W.2d at 311. There was nothing to set Shamsie's conduct apart from otherwise in-

---

4. We also note that the physical touching of Shamsie may, in itself, have resulted in a detention. *See Hodari D.*, 499 U.S. at 626, 111 S.Ct. at 1551 ("An arrest requires *either* physical force ... *or*, where that is absent, submission to the assertion of authority.").

5. Specifically, defense counsel argued that Actifed Sinus, Sudafed, Tylenol P.M., and Dimetapp are similar in appearance to Diazepam.

nocent conduct. *See Crockett,* 803 S.W.2d at 311.

 The trial court may consider whether Shamsie's conduct was "as consistent with innocent activity as with criminal activity" as a factor in determining the degree of suspicion attaching to the conduct. *See Woods v. State,* 933 S.W.2d 719, 726 (Tex.App.—Austin 1996, pet. filed). In *Crockett,* the appellant contended that his behavior could not have been suspicious because it was "perfectly lawful." The court of criminal appeals elaborated on the reasonable suspicion standard in the investigative detention context:

> [S]uch circumstances as will raise suspicion that illegal conduct is taking place need not be criminal in themselves. Rather, they may include any facts which in some measure render the likelihood of criminal conduct greater than it would otherwise be.
>
> . . .
>
> At a minimum, however, the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them.

*Crockett,* 803 S.W.2d at 311 (citing *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979)). Therefore, observed conduct that does not sufficiently set a person apart from innocent persons under the same circumstances does not, alone, create reasonable suspicion; an officer must have facts increasing the likelihood of criminal conduct.

> At the hearing below, the judge stated
>
> I just don't think there's enough. If this were to happen on a street corner where drugs were supposedly sold and a person by himself reaches in his pocket and pulls out a tissue and there's a little pill in there, that's not enough to stop that person. You have to have something more than that.
>
> . . .
>
> Merely because they are in a club where drugs happen to be sold doesn't warrant that kind of intrusion. . . .

These comments demonstrate the trial court considered whether the circumstances gave rise to a degree of suspicion constitutionally justifying a detention. *See Sokolow,* 490 U.S. at 9, 109 S.Ct. at 1586; *Holladay,* 805 S.W.2d at 473. The record contains nothing that set Shamsie apart from an innocent person. The trial court's conclusion that the officers lacked constitutionally adequate suspicion was rational. Accordingly, the trial court did not abuse its discretion. We overrule the State's second point of error.

### CONCLUSION

Having overruled both of the State's points of error, we affirm the order of the trial court.