Terrance HORTON, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 03–99–00213–CR, 03–99–00214–CR.

Court of Appeals of Texas,
Austin.

April 13, 2000.

James Adkins, Austin, for Appellant.

Philip A. Nelson, Jr., Asst. Dist. Atty., Austin, for Appellee.

Before Justices JONES, YEAKEL and PATTERSON.

J. WOODFIN JONES, Justice.

After his motion to suppress evidence was overruled by the district court, appellant Terrance Horton pleaded guilty to possessing less than one gram of cocaine and to the attempted possession of a firearm by a felon. *See* Tex. Health & Safety Code Ann. § 481.115(a), (b) (West Supp. 2000); Tex. Penal Code Ann. §§ 15.01, 46.04 (West 1994). In the cocaine case, appellant also admitted a previous felony conviction alleged for enhancement of punishment. *See* Tex. Penal Code Ann. § 12.42(a)(1) (West Supp.2000). In accord with a plea bargain, the court assessed punishment in each cause at imprisonment for two years. By three points of error, appellant contends he was unlawfully seized and searched and that the evidence thereby obtained should have been suppressed. We will sustain one of appellant's contentions and reverse.

Austin Police Officer Cara Boyd testified that she and her partner, Officer Soto, were on routine patrol shortly after midnight on July 27, 1998, when they received a call to assist emergency medical personnel. At the specified address, they found the EMS vehicle and an automobile occupied by a man who appeared to be asleep or unconscious.[1] Boyd ran a license check on the automobile, which proved negative. As Boyd was doing this, Soto walked up to the automobile on the passenger (curb) side and awakened the occupant, who was appellant.

Soto asked appellant, who was sweating profusely, to step out of the car, and he did so. According to Boyd, appellant seemed nervous. "He was moving a lot and wouldn't stand still and just seemed like a nervous person, just moving around a lot, looking around, not standing still." Boyd got the impression that appellant wanted to get back in his car. She testified, "I felt like that he wanted to get back in the car either to hide something or to get something," adding, "There is always a chance that there is a weapon." Boyd took appellant's keys "[b]ecause of the way he was acting, I didn't want him to use [the keys] as a weapon." Boyd acknowledged that appellant was not free to leave. By this time, a second pair of police officers had arrived at the scene.

Boyd asked appellant for identification, and "[w]hen he said his ID was in his car, I told him that I would get it for him, and he told me where it was." Boyd reached inside appellant's car for a notebook on the passenger seat that appellant said contained his identification. She did not see a weapon or contraband. Boyd took appellant's driver's license to the patrol car to run a warrant check. Meanwhile, Soto began to "frisk" appellant's car. Boyd explained, "When we do a vehicle frisk, it is to make sure there [are] no weapons in a lungeable area, so that when we allow him

---

1. The record does not reveal how EMS personnel came to be at this location.

back in the car, the officers are safe." During this search, for which consent was neither requested nor received, Soto found a pistol in the space between the driver's seat and the center console.

Appellant was arrested for unlawfully carrying a weapon. Cocaine was found in appellant's pocket during a search of his person incident to the arrest. Following the arrest, EMS took appellant to Brackenridge Hospital.[2]

Appellant contends he was arrested in violation of article 14.01 of the Code of Criminal Procedure. *See* Tex.Code Crim. Proc. Ann. art. 14.01 (West 1977). He also urges that he was detained, arrested, and searched in violation of the United States and Texas constitutions. *See* U.S. Const. amends. IV, XIV; Tex. Const. art. I, § 9. Finally, he asserts that the search of his automobile violated the Fourth Amendment. In reviewing these contentions, we defer to the district court's factual determinations but review *de novo* the court's application of the law to the facts. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997). Because the district court did not make explicit findings of fact, we review the evidence in the light most favorable to the court's ruling and assume the court made findings that are supported by the record and buttress its conclusion. *See Carmouche v. State,* 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000).[3]

■ Not every encounter between a civilian and a police officer is of constitutional dimension. A police officer may approach a person without probable cause or reasonable suspicion to ask questions or even to request a search. *See Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App. 1995); *Armstrong v. State,* 966 S.W.2d

150, 152 (Tex.App.—Austin 1998, no pet.). So long as the person remains free to disregard the officer's questions and go about his business, the encounter is consensual and merits no further constitutional analysis. *See Johnson,* 912 S.W.2d at 235 (citing *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)); *State v. Shamsie,* 940 S.W.2d 223, 225 (Tex.App.—Austin 1997, no pet.). The Fourth Amendment and article one, section nine are invoked only when the encounter rises to the level of a seizure. Under both the federal and state constitutions, a person is seized when he yields to an officer's show of authority under circumstances in which a reasonable person would believe he is not free to leave. *See Johnson,* 912 S.W.2d at 236; *Shamsie,* 940 S.W.2d at 225.

■ The seizure of a person by a police officer may take two forms: an arrest or a temporary detention for purposes of investigation. Both forms of seizure involve a restraint on a person's liberty of movement. Whether a particular seizure is an arrest or merely a temporary detention is a matter of degree, and turns on such factors as the length of the detention, the amount of force employed, and whether the officer actually conducts an investigation. *See Woods v. State,* 970 S.W.2d 770, 775 (Tex.App.—Austin 1998, pet. ref'd). There is no bright-line test to distinguish an arrest from a detention. *See Rhodes v. State,* 945 S.W.2d 115, 118 (Tex. Crim.App.1997) (handcuffing is not always equivalent to arrest).

■ In the cause before us, EMS technicians somehow found themselves confronted after midnight with an unidentified man in a parked car who appeared to be unconscious. Under the circumstances, it

---

**2.** We do not know why appellant was taken to the hospital or the nature of the treatment, if any, he received.

**3.** The State's brief does not address the merits of appellant's contentions, but merely urges that appellant did not secure a ruling on his

motion to suppress. After the State's brief was filed, the Court received and filed a supplemental reporter's record containing the district court's express overruling of the motion.

was reasonable for police officers rather than the emergency medical technicians to make first contact with the man. While the encounter between appellant and the officers did not begin as a seizure, it became a seizure when the officers ordered him out of his car, took his keys, and prevented him from reentering the car. Appellant argues that he was arrested at this point, but we disagree. Considering all the circumstances shown by the record, we conclude that appellant was merely detained for investigation. Appellant had been in the officers' presence for only a few moments, he was not physically restrained, and the officers were actively investigating the situation before them. Viewed objectively, appellant's freedom of movement had not been restrained to the degree which the law associates with formal arrest. *See Medford v. State,* 13 S.W.3d 769, 773–74 (Tex.Crim.App. 2000) (discussing nature of arrest in context of prosecution for escape).

The seizure of appellant did not escalate into an arrest until the pistol was found in his car. Because appellant's contention that his warrantless arrest violated article 14.01 is premised on his assertion that he was arrested prior to the discovery of the pistol, the argument fails. Point of error one is overruled.

■ In overruling the motion to suppress, the district court said, "This is community caretaking." The court was referring to the community caretaking doctrine recognized in *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Relying on this doctrine, the Court of Criminal Appeals recently held that the Fourth Amendment permits a police officer to stop and detain a person for further investigation if the officer reasonably suspects that the person may be ill and in need of assistance. *See Wright v. State,* 7 S.W.3d 148, 151–52 (Tex.Crim. App.1999). The court earlier held that the Texas Constitution permits a detention under such circumstances. *See Hulit v. State,* 982 S.W.2d 431, 438 (Tex.Crim.App.

1998). Although appellant contends that his detention was unjustified in this case, we do not reach this question. Even if appellant's detention was a lawful exercise of the officers' community caretaking function, we find no justification in the record for the search of appellant's car.

■ A police officer who has lawfully detained a person for investigation of suspected criminal activity may conduct a limited search for weapons only if the circumstances give the officer reason to believe that the person detained is armed and dangerous. *See Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Spillman v. State,* 824 S.W.2d 806, 811 (Tex.App.—Austin 1992, pet. ref'd). Under some circumstances, this right to conduct a protective frisk may also extend to the passenger compartment of the detainee's automobile.

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. 1868). A police officer may not search an automobile for weapons whenever the officer effects an investigative stop, but may do so only if the officer possesses the level of suspicion identified in *Terry. See id.* n. 14, 88 S.Ct. 1868.

■ A police officer's authority to search for weapons in the absence of probable cause is narrowly drawn, even when the officer reasonably suspects criminal activity. *See Terry,* 392 U.S. at 27, 88 S.Ct. 1868. In determining whether an officer acted reasonably in a particular case, due weight must be given, not to the officer's

inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences which the officer is entitled to draw from the facts in light of experience. *See id.* When the detention is based on the officer's community caretaking function, the authority to search for weapons must be restricted at least to the same extent.

It is instructive to consider the facts in *Long. See* 463 U.S. at 1035–36, 103 S.Ct. 3469. Two sheriff's deputies were on patrol shortly after midnight when they saw a car traveling erratically and at excessive speed on a rural road. As they watched, the car swerved off the road into a shallow ditch. The officers stopped to investigate. Long, the only occupant of the car, got out and met the deputies as they approached the car on foot. Long appeared to be "under the influence of something" and did not immediately respond to the deputies' questions. When asked to produce his vehicle registration, Long began to walk toward the car. As they followed him, the deputies saw through the open door a large hunting knife on the driver's side floorboard. The deputies stopped Long from entering the car and frisked him, finding no weapons. One of the deputies then searched the interior of Long's car for other weapons and found a bag of marihuana protruding from under the front seat armrest. The United States Supreme Court concluded that under these circumstances, the deputies "did not act unreasonably in taking preventive measures to ensure that there were no other weapons within Long's immediate grasp before permitting him to reenter his automobile." *Id.* at 1051, 103 S.Ct. 3469.

This Court has had a previous occasion to apply *Long. See Ramsey v. State,* 806 S.W.2d 954 (Tex.App.—Austin 1991, pet. ref'd). In that case, an Austin police officer saw a car speeding down a city street at 2:00 a.m. As the officer followed, the car cut through a business parking lot and, without stopping, turned onto a major thoroughfare. The officer stopped the car. As the officer walked up to the stopped car, he saw the driver, Ramsey, pick up a shaving kit and throw it onto the passenger-side floorboard. Ramsey got out of his car at the officer's request and exhibited his driver's license. Ramsey appeared to be disoriented and his eyes were glassy. The officer believed he was intoxicated. The officer removed the shaving kit from Ramsey's car and searched it, saying that he believed that it might contain a weapon. *See id.* at 955. We concluded from this evidence that the officer had specific and articulable facts warranting a reasonable belief that Ramsey posed a danger if he were permitted to reenter his car, and that the officer acted reasonably in taking preventive measures to ensure that there were no weapons within Ramsey's grasp before allowing him to return to the car. *See id.* at 958.

In the present cause, appellant appears to have been lawfully parked and was seen to commit no traffic offense. Boyd did not testify to any furtive gestures or suspicious acts by appellant. She did not cite appellant's location or the fact he was asleep in his car as being suspicious circumstances. As to appellant's heavy perspiration, the officer said, "It could be from drug ingestion or any other kind of medical problem, I suppose." The only suspicious circumstance remarked by the officer was appellant's apparent nervousness, which caused Boyd to believe that he wanted to get back in his car. But the officer did not cite any specific fact that caused her to believe that appellant had a weapon in the car. Instead, she merely expressed the general observation that "[t]here is always a chance that there is a weapon." It is notable that while Boyd took appellant's keys because she "didn't want him to use [them] as a weapon," there is no evidence that appellant himself was frisked for weapons.

As Boyd testified, one purpose for permitting *Terry* searches of automobiles is "to make sure there [are] no weapons in a lungeable area, so that when we allow him back in the car, the officers are safe." *See*

*Long,* 463 U.S. at 1050–51, 103 S.Ct. 3469. Nonetheless, before such a search is undertaken, the officer conducting the search must have a reasonable basis for believing that the suspect is dangerous and may gain control of a weapon when he reenters the vehicle. Even when the evidence is viewed in the light most favorable to the district court's ruling, the State failed to prove that the officers had specific, articulable facts that reasonably warranted a belief that appellant's car contained a weapon or that appellant himself was dangerous. The unlawful vehicle search resulted in the discovery of the pistol and tainted the subsequent discovery of the cocaine. The district court erred by overruling appellant's motion to suppress.

Point of error three is sustained insofar as it complains that the search of appellant's automobile violated the Fourth Amendment. The judgments of conviction are reversed, and the causes are remanded to the district court.