TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00213-CR


NO. 03-99-00214-CR







Terrance Horton, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NOS. 0983800 & 0983801, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







After his motion to suppress evidence was overruled by the district court, appellant
Terrance Horton pleaded guilty to possessing less than one gram of cocaine and to the attempted
possession of a firearm by a felon. See Tex. Health & Safety Code Ann. § 481.115(a), (b) (West
Supp. 2000); Tex. Penal Code Ann. §§ 15.01, 46.04 (West 1994). In the cocaine case, appellant
also admitted a previous felony conviction alleged for enhancement of punishment. See Tex.
Penal Code Ann. § 12.42(a)(1) (West Supp. 2000). In accord with a plea bargain, the court
assessed punishment in each cause at imprisonment for two years. By three points of error,
appellant contends he was unlawfully seized and searched and that the evidence thereby obtained
should have been suppressed. We will sustain one of appellant's contentions and reverse.

Austin Police Officer Cara Boyd testified that she and her partner, Officer Soto,
were on routine patrol shortly after midnight on July 27, 1998, when they received a call to assist
emergency medical personnel. At the specified address, they found the EMS vehicle and an
automobile occupied by a man who appeared to be asleep or unconscious. (1) Boyd ran a license
check on the automobile, which proved negative. As Boyd was doing this, Soto walked up to the
automobile on the passenger (curb) side and awakened the occupant, who was appellant.

Soto asked appellant, who was sweating profusely, to step out of the car, and he
did so. According to Boyd, appellant seemed nervous. "He was moving a lot and wouldn't stand
still and just seemed like a nervous person, just moving around a lot, looking around, not standing
still." Boyd got the impression that appellant wanted to get back in his car. She testified, "I felt
like that he wanted to get back in the car either to hide something or to get something," adding,
"There is always a chance that there is a weapon." Boyd took appellant's keys "[b]ecause of the
way he was acting, I didn't want him to use [the keys] as a weapon." Boyd acknowledged that
appellant was not free to leave. By this time, a second pair of police officers had arrived at the
scene.

Boyd asked appellant for identification, and "[w]hen he said his ID was in his car,
I told him that I would get it for him, and he told me where it was." Boyd reached inside
appellant's car for a notebook on the passenger seat that appellant said contained his identification. 
She did not see a weapon or contraband. Boyd took appellant's driver's license to the patrol car
to run a warrant check. Meanwhile, Soto began to "frisk" appellant's car. Boyd explained,
"When we do a vehicle frisk, it is to make sure there [are] no weapons in a lungeable area, so that
when we allow him back in the car, the officers are safe." During this search, for which consent
was neither requested nor received, Soto found a pistol in the space between the driver's seat and
the center console.

Appellant was arrested for unlawfully carrying a weapon. Cocaine was found in
appellant's pocket during a search of his person incident to the arrest. Following the arrest, EMS
took appellant to Brackenridge Hospital. (2)

Appellant contends he was arrested in violation of article 14.01 of the Code of
Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 14.01 (West 1977). He also urges
that he was detained, arrested, and searched in violation of the United States and Texas
constitutions. See U.S. Const. amends. IV, XIV; Tex. Const. art. I, § 9. Finally, he asserts that
the search of his automobile violated the Fourth Amendment. In reviewing these contentions, we
defer to the district court's factual determinations but review de novo the court's application of
the law to the facts. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Because
the district court did not make explicit findings of fact, we review the evidence in the light most
favorable to the court's ruling and assume the court made findings that are supported by the record
and buttress its conclusion. See Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App.
2000). (3)

Not every encounter between a civilian and a police officer is of constitutional
dimension. A police officer may approach a person without probable cause or reasonable
suspicion to ask questions or even to request a search. See Florida v. Royer, 460 U.S. 491, 497-98 (1983); Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995); Armstrong v. State,
966 S.W.2d 150, 152 (Tex. App.--Austin 1998, no pet.). So long as the person remains free to
disregard the officer's questions and go about his business, the encounter is consensual and merits
no further constitutional analysis. See Johnson, 912 S.W.2d at 235 (citing California v. Hodari
D., 499 U.S. 621, 628 (1991)); State v. Shamsie, 940 S.W.2d 223, 225 (Tex. App.--Austin 1997,
no pet.). The Fourth Amendment and article one, section nine are invoked only when the
encounter rises to the level of a seizure. Under both the federal and state constitutions, a person
is seized when he yields to an officer's show of authority under circumstances in which a
reasonable person would believe he is not free to leave. See Johnson, 912 S.W.2d at 236;
Shamsie, 940 S.W.2d at 225.

The seizure of a person by a police officer may take two forms: an arrest or a
temporary detention for purposes of investigation. Both forms of seizure involve a restraint on
a person's liberty of movement. Whether a particular seizure is an arrest or merely a temporary
detention is a matter of degree, and turns on such factors as the length of the detention, the
amount of force employed, and whether the officer actually conducts an investigation. See Woods
v. State, 970 S.W.2d 770, 775 (Tex. App.--Austin 1998, pet. ref'd). There is no bright-line test
to distinguish an arrest from a detention. See Rhodes v. State, 945 S.W.2d 115, 118 (Tex. Crim.
App. 1997) (handcuffing is not always equivalent to arrest).

In the cause before us, EMS technicians somehow found themselves confronted
after midnight with an unidentified man in a parked car who appeared to be unconscious. Under
the circumstances, it was reasonable for police officers rather than the emergency medical
technicians to make first contact with the man. While the encounter between appellant and the
officers did not begin as a seizure, it became a seizure when the officers ordered him out of his
car, took his keys, and prevented him from reentering the car. Appellant argues that he was
arrested at this point, but we disagree. Considering all the circumstances shown by the record,
we conclude that appellant was merely detained for investigation. Appellant had been in the
officers' presence for only a few moments, he was not physically restrained, and the officers were
actively investigating the situation before them. Viewed objectively, appellant's freedom of
movement had not been restrained to the degree which the law associates with formal arrest. See
Medford v. State, No. 521-99, slip op. at 7 (Tex. Crim. App. Feb. 23, 2000) (discussing nature
of arrest in context of prosecution for escape). 

The seizure of appellant did not escalate into an arrest until the pistol was found
in his car. Because appellant's contention that his warrantless arrest violated article 14.01 is
premised on his assertion that he was arrested prior to the discovery of the pistol, the argument
fails. Point of error one is overruled.

In overruling the motion to suppress, the district court said, "This is community
caretaking." The court was referring to the community caretaking doctrine recognized in Cady
v. Dombrowski, 413 U.S. 433, 441 (1973). Relying on this doctrine, the Court of Criminal
Appeals recently held that the Fourth Amendment permits a police officer to stop and detain a
person for further investigation if the officer reasonably suspects that the person may be ill and
in need of assistance. See Wright v. State, 7 S.W.3d 148, 151-52 (Tex. Crim. App. 1999). The
court earlier held that the Texas Constitution permits a detention under such circumstances. See
Hulit v. State, 982 S.W.2d 431, 438 (Tex. Crim. App. 1998). Although appellant contends that
his detention was unjustified in this case, we do not reach this question. Even if appellant's
detention was a lawful exercise of the officers' community caretaking function, we find no
justification in the record for the search of appellant's car.

A police officer who has lawfully detained a person for investigation of suspected
criminal activity may conduct a limited search for weapons only if the circumstances give the
officer reason to believe that the person detained is armed and dangerous. See Terry v. Ohio, 392
U.S. 1, 30 (1968); Spillman v. State, 824 S.W.2d 806, 811 (Tex. App.--Austin 1992, pet. ref'd). 
Under some circumstances, this right to conduct a protective frisk may also extend to the
passenger compartment of the detainee's automobile.


[T]he search of the passenger compartment of an automobile, limited to those areas
in which a weapon may be placed or hidden, is permissible if the police officer
possesses a reasonable belief based on "specific and articulable facts which, taken
together with the rational inferences from those facts, reasonably warrant" the
officer in believing that the suspect is dangerous and the suspect may gain
immediate control of weapons.



Michigan v. Long, 463 U.S. 1032, 1049 (1983) (quoting Terry, 392 U.S. at 21). A police officer
may not search an automobile for weapons whenever the officer effects an investigative stop, but
may do so only if the officer possesses the level of suspicion identified in Terry. See id. n.14.

A police officer's authority to search for weapons in the absence of probable cause
is narrowly drawn, even when the officer reasonably suspects criminal activity. See Terry, 392
U.S. at 27. In determining whether an officer acted reasonably in a particular case, due weight
must be given, not to the officer's inchoate and unparticularized suspicion or hunch, but to the
specific reasonable inferences which the officer is entitled to draw from the facts in light of
experience. See id. When the detention is based on the officer's community caretaking function,
the authority to search for weapons must be restricted at least to the same extent.

It is instructive to consider the facts in Long. See 463 U.S. at 1035-36. Two
sheriff's deputies were on patrol shortly after midnight when they saw a car traveling erratically
and at excessive speed on a rural road. As they watched, the car swerved off the road into a
shallow ditch. The officers stopped to investigate. Long, the only occupant of the car, got out
and met the deputies as they approached the car on foot. Long appeared to be "under the
influence of something" and did not immediately respond to the deputies' questions. When asked
to produce his vehicle registration, Long began to walk toward the car. As they followed him,
the deputies saw through the open door a large hunting knife on the driver's side floorboard. The
deputies stopped Long from entering the car and frisked him, finding no weapons. One of the
deputies then searched the interior of Long's car for other weapons and found a bag of marihuana
protruding from under the front seat armrest. The United States Supreme Court concluded that
under these circumstances, the deputies "did not act unreasonably in taking preventive measures
to ensure that there were no other weapons within Long's immediate grasp before permitting him
to reenter his automobile." Id. at 1051.

This Court has had a previous occasion to apply Long. See Ramsey v. State, 806
S.W.2d 954 (Tex. App.--Austin 1991, pet. ref'd). In that case, an Austin police officer saw a car
speeding down a city street at 2:00 a.m. As the officer followed, the car cut through a business
parking lot and, without stopping, turned onto a major thoroughfare. The officer stopped the car. 
As the officer walked up to the stopped car, he saw the driver, Ramsey, pick up a shaving kit and
throw it onto the passenger-side floorboard. Ramsey got out of his car at the officer's request and
exhibited his driver's license. Ramsey appeared to be disoriented and his eyes were glassy. The
officer believed he was intoxicated. The officer removed the shaving kit from Ramsey's car and
searched it, saying that he believed that it might contain a weapon. See id. at 955. We concluded
from this evidence that the officer had specific and articulable facts warranting a reasonable belief
that Ramsey posed a danger if he were permitted to reenter his car, and that the officer acted
reasonably in taking preventive measures to ensure that there were no weapons within Ramsey's
grasp before allowing him to return to the car. See id. at 958.

In the present cause, appellant appears to have been lawfully parked and was seen
to commit no traffic offense. Boyd did not testify to any furtive gestures or suspicious acts by
appellant. She did not cite appellant's location or the fact he was asleep in his car as being
suspicious circumstances. As to appellant's heavy perspiration, the officer said, "It could be from
drug ingestion or any other kind of medical problem, I suppose." The only suspicious
circumstance remarked by the officer was appellant's apparent nervousness, which caused Boyd
to believe that he wanted to get back in his car. But the officer did not cite any specific fact that
caused her to believe that appellant had a weapon in the car. Instead, she merely expressed the
general observation that "[t]here is always a chance that there is a weapon." It is notable that
while Boyd took appellant's keys because she "didn't want him to use [them] as a weapon," there
is no evidence that appellant himself was frisked for weapons.

As Boyd testified, one purpose for permitting Terry searches of automobiles is "to
make sure there [are] no weapons in a lungeable area, so that when we allow him back in the car,
the officers are safe." See Long, 463 U.S. at 1050-51. Nonetheless, before such a search is
undertaken, the officer conducting the search must have a reasonable basis for believing that the
suspect is dangerous and may gain control of a weapon when he reenters the vehicle. Even when
the evidence is viewed in the light most favorable to the district court's ruling, the State failed to
prove that the officers had specific, articulable facts that reasonably warranted a belief that
appellant's car contained a weapon or that appellant himself was dangerous. The unlawful vehicle
search resulted in the discovery of the pistol and tainted the subsequent discovery of the cocaine. 
The district court erred by overruling appellant's motion to suppress.

Point of error three is sustained insofar as it complains that the search of appellant's
automobile violated the Fourth Amendment. The judgments of conviction are reversed, and the
causes are remanded to the district court.



 


 J. Woodfin Jones, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded on Both Causes

Filed: April 13, 2000

Publish
1. The record does not reveal how EMS personnel came to be at this location. 
2. We do not know why appellant was taken to the hospital or the nature of the treatment, if
any, he received.
3. The State's brief does not address the merits of appellant's contentions, but merely urges
that appellant did not secure a ruling on his motion to suppress. After the State's brief was filed,
the Court received and filed a supplemental reporter's record containing the district court's
express overruling of the motion.



 One of the
deputies then searched the interior of Long's car for other weapons and found a bag of marihuana
protruding from under the front seat armrest. The United States Supreme Court concluded that
under these circumstances, the deputies "did not act unreasonably in taking preventive measures
to ensure that there were no other weapons within Long's immediate grasp before permitting him
to reenter his automobile." Id. at 1051.

This Court has had a previous occasion to apply Long. See Ramsey v. State, 806
S.W.2d 954 (Tex. App.--Austin 1991, pet. ref'd). In that case, an Austin police officer saw a car
speeding down a city street at 2:00 a.m. As the officer followed, the car cut through a business
parking lot and, without stopping, turned onto a major thoroughfare. The officer stopped the car. 
As the officer walked up to the stopped car, he saw the driver, Ramsey, pick up a shaving kit and
throw it onto the passenger-side floorboard. Ramsey got out of his car at the officer's request and
exhibited his driver's license. Ramsey appeared to be disoriented and his eyes were glassy. The
officer believed he was intoxicated. The officer removed the shaving kit from Ramsey's car and
searched it, saying that he believed that it might contain a weapon. See id. at 955. We concluded
from this evidence that the officer had specific and articulable facts warranting a reasonable belief
that Ramsey posed a danger if he were permitted to reenter his car, and that the officer acted
reasonably in taking preventive measures to ensure that there were no weapons within Ramsey's
grasp before