# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
**NO. 03-04-00519-CV**
---

**In the Matter of C.A.N.**

---
**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 04-220-J277, HONORABLE BURT CARNES, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

After his motion to suppress was overruled, appellant C.A.N., pleaded true to unlawfully carrying a weapon and to the unauthorized use of a motor vehicle. See Tex. Pen. Code Ann. §§ 46.02, 31.07 (West 2003). C.A.N. was adjudicated delinquent and committed to the Texas Youth Commission. The trial court certified C.A.N.'s right to appeal. In this appeal, C.A.N. contends that the trial court erred by overruling his motion to suppress because the police lacked reasonable suspicion to conduct a *Terry* stop. *See Terry v. Ohio,* 392 U.S. 1, 30 (1968). We affirm the judgment of the trial court.

**Background**

Around midnight on May 7, 2004, Corporal Miles and Deputy Nixon of the Travis County Constable's Office were patrolling a shopping center containing several businesses, including a pool hall, a movie theater, and a Burlington Coat Factory. Located behind the businesses

is an alley, beyond which is a ditch and a fence surrounding an apartment complex. Corporal Miles was training Deputy Nixon and explained the need to watch the alley behind the businesses carefully as the area had been deemed a high crime area by Austin police. Local businesses routinely requested police patrols, and arrests were common for burglaries, drugs, and prostitution.

As the officers rounded the corner of the shopping center to patrol the alley, they witnessed two individuals run and quickly dart behind a large electrical power box in what Corporal Miles described as an obvious attempt to hide. Corporal Miles testified that occasionally people used the alley as a short-cut to reach the apartments behind the alley, but that such individuals usually waved and kept on walking. Corporal Miles informed the dispatcher that he was getting out of the car to investigate two suspicious individuals. He announced who he was and instructed the two individuals hiding behind the electrical box to come out. Both complied.

Corporal Miles instructed C.A.N. to drop a jacket he was carrying on the ground and then patted down the outer layers of each individual's clothing to make sure that neither was in possession of any weapons. Deputy Nixon testified that officers always frisked people who were detained in that area to ensure their own safety. While C.A.N was being frisked by Corporal Miles, Deputy Nixon stood behind the other unknown individual, who appeared very nervous and kept moving around. No weapons were found on the bodies of either individual. However, when Corporal Miles picked up C.A.N.'s jacket, he found a twelve-inch, double bladed knife. At this point, the other individual ran away and his identity was never discovered. After arresting C.A.N. and while transporting him to juvenile detention, the officers learned that C.A.N. was suspected of

2

stealing his parents' vehicle. At the detention center, C.A.N. produced his parents' car keys and told the police where the vehicle was located.

**Discussion**

In his only issue, C.A.N. argues that because the initial stop that led to his arrest was illegal, all subsequent evidence, such as the discovery of the car keys and any of C.A.N.'s later statements, should have been suppressed by the trial court.

When reviewing a trial court's ruling on a motion to suppress evidence, we give almost total deference to a trial court's determination of the facts and review *de novo* the court's application of the law of search and seizure. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). When the court does not make explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's rulings and assume that the court made implicit findings of fact supported by the record. *Id.* We must affirm the trial court's ruling on a motion to suppress if it can be upheld on any valid theory of law applicable to the case—even if the trial court did not base its decision on the applicable theory. *State v. Steelman,* 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

C.A.N. contends that the trial court erred by denying the motion to suppress because the police did not provide specific and articulable facts creating reasonable suspicion that C.A.N. was associated with a crime or that C.A.N. was armed and dangerous.

While both the United States Constitution and the Texas Constitution prohibit unreasonable searches, an officer may stop and detain a person for investigation if the officer, based on specific and articulable facts, reasonably believes that the detained person may be associated with

3

a crime. *See Terry,* 392 U.S. at 30; *Balentine*, 71 S.W.3d at 768. *Terry* established that a police officer may conduct a limited search of a person's outer clothing to discover weapons when the police officer observes unusual conduct which leads him reasonably to conclude, in light of his experience, that the person with whom he is dealing may be armed. *See Terry,* 392 U.S. at 30. The rationale for allowing an officer to frisk a suspicious individual's clothing for weapons, without having the higher standard of probable cause, is predicated on the notion that it is reasonable to permit a police officer to neutralize the threat of potential physical harm when he has an articulable suspicion that an individual is armed and dangerous. *See Wood v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App. 1974); *Ramsey v. State,* 806 S.W.2d 954, 956 (Tex. App.—Austin 1991, pet. ref'd) (citing *Terry*, 392 U.S. at 24). Officers in such situations must be able to provide more than an "inchoate and unparticularized suspicion" of criminal activity. *Terry,* 392 U.S. at 27. In other words, officers must provide a minimum level of objective justification consisting of more than a good faith "hunch" that an individual is engaged in criminal behavior. *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000); *Terry,* 392 U.S. at 27.

Determining whether an officer may detain an individual for investigation and conduct a pat-down search of the individual's clothing requires a consideration of the totality of the circumstances on a case-by-case basis. *United States v. Cortez,* 449 U.S. 411, 417 (1981); *Carmouche v. State,* 10 S.W.3d 323, 329 (Tex. Crim. App. 2000); *Woods v. State*, 970 S.W.2d 770, 773 (Tex. App.—Austin 1998, no pet.).

Here, C.A.N. asserts that officers had no evidence that anyone had committed a crime or that a crime had been committed in the area, and that C.A.N. never made any furtive gesture

which could give rise to a reasonable suspicion that he had been or would soon become involved in criminal activity. Consequently, C.A.N. claims that the sole reason for the officers' suspicion was that he was in a high crime area; he insists that being in a high crime area alone is not enough to provide the requisite reasonable suspicion. *See Gurrola v. State,* 877 S.W.2d 300 (Tex. Crim. App. 1994).

The Supreme Court's decision in *Illinois v. Wardlow* controls this case. *See* 528 U.S. at 124. While an individual's presence in an area of high criminal activity alone is not enough to support a reasonable suspicion, officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. *See id.* at 123-24. The fact that the incident occurs in a high crime area is but one of the relevant factors to be considered in reviewing the totality of the circumstances to determine if the officer had a reasonable suspicion. *See id.*

In *Wardlow*, officers were converging on an area known for heavy drug trafficking and decided to investigate the defendant after observing him flee when he realized that police officers were patrolling the area. *See id.* at 121. In the officers' experience it was common to find weapons near the vicinity of drug transactions so, after cornering the defendant, the officers immediately conducted a pat-down search for weapons. *Id.* Officers patted down a bag the defendant was carrying and discovered a .38-caliber handgun. *Id.* The Supreme Court explained in *Wardlow* that the defendant's presence in the area, along with his unprovoked flight, were relevant factors that led to the conclusion that the evidence was legally seized. *See id.* at 124. The Court further stated that nervous, evasive behavior is a relevant factor for consideration. *See id.*

5

In this case, C.A.N's actions occurred after midnight in a dimly lit alley recognized by Austin police as a high crime area; business owners there frequently requested increased patrol. Just as the police rounded the corner to patrol the alley, C.A.N. and his companion darted behind an electrical box; these were unusual actions at least as suspicious as fleeing from police or making a furtive gesture. The other unknown individual at the scene was recognizably nervous and evasive. Corporal Miles had personally made several arrests in that location during late night hours.

C.A.N. argues that the individual factors of nervousness, merely walking away from officers, and simply being in a high crime area do not provide the requisite reasonable suspicion to justify a Terry search. *See*, *e.g.*, *Horton v. State*, 16 S.W.3d 848, 853-854 (Tex. App.—Austin 2000, no pet.) (finding that nervous behavior alone was not enough for reasonable suspicion); *Gamble v. State,* 8 S.W.3d 452 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (walking away from police in residential neighborhood at night, without other circumstances giving rise to suspicion, was not enough to justify frisk).

However, we do not view these facts in isolation. In light of the totality of the circumstances presented, including Corporal Miles' personal experience patrolling the area, the officers had specific and articulable facts warranting a reasonable belief that C.A.N. potentially posed a danger; the officers acted reasonably in taking preventative measures to ensure their safety. *See Terry*, 392 U.S. at 30. From the specific and reasonable inferences that officers are entitled to draw in light of their experiences, the officers had reasonable suspicion to immediately conduct a pat-down search of C.A.N.'s clothing for weapons. Accordingly, the trial court properly overruled C.A.N.'s motion to suppress.

**Conclusion**

We affirm the trial court's judgment.

_____            _____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   June 15, 2005

7